Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
747 Chestnut Ridge Rd., Suite 200
Chestnut Ridge, NY 10977
Tel: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com

Mitchell M.Z. Twersky, Esq.
Ximena R. Skovron, Esq.
**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com
xskovron@aftlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY, CHAIM HIRSCHFELD, and SUZANNE GRUNSTEIN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, MSD CONSUMER CARE, INC., f/k/a SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., MERCK SHARP & DOHME CORP., AS SUCCESSOR IN INTEREST TO SCHERING CORPORATION, SCHERING-PLOUGH HEALTHCARE PRODUCTS SALES CORPORATION, AND SCHERING-PLOUGH HEALTHCARE PRODUCTS ADVERTISING CORPORATION,<br><br>        Defendants. | Civil Action No.<br><br><br>**CLASS ACTION**<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Steven Brody, Chaim Hirschfeld, and Suzanne Grunstein (hereinafter, "Plaintiffs"), by their attorneys, Abraham, Fruchter & Twersky, LLP, allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1. Plaintiffs bring this action individually, and on behalf of all other persons who purchased certain Coppertone sunscreen products that were labeled and advertised to provide protection against the sun's UVA and/or UVB rays ("Coppertone sunscreen products"). As alleged herein, Merck & Co., Inc., MSD Consumer Care, Inc., and Merck Sharp & Dohme Corp. (collectively, "Merck" or "Defendants") engaged in, and continue to engage in, unconscionable business practices and deceptive acts in connection with the labeling, advertising, marketing and sale of their sunscreen products which have harmed Plaintiffs and the Class and which will continue to harm consumers unless the practices are stopped.

2. During the Class Period, Defendants engaged in a common plan and scheme through the use of misleading labeling and advertising claims on their Coppertone sunscreen products to induce consumers to purchase their products based on the purported benefits provided, including but not limited to the amount of UVA and/or UVB protection provided by these products.

3. As detailed below, through their deceptive and misleading product labels and advertising, Defendants have led consumers to believe that their sunscreen products provide complete protection against the sun's harmful UVA and/or UVB rays.

4. Defendants' labeling, for example, represent, among other things that their Coppertone products offer "protection from the sun's harmful UVA and UVB rays." Ultraviolet (UV) rays are part of the sun's spectrum and consist of wavelengths that are shorter than visible

2

light.  Ultraviolet rays are divided into UVA (320-400 nanometers), UVB (290-320 nm) and UVC (less than 290 nm).

5.      In truth and in fact, however, as the Defendants knew or should have known, their Coppertone sunscreen products, at  best, only protect the skin against harmful UVA rays  that penetrate deep within the skin having  shorter wavelengths.  As a consequence of Defendants' deceptive practices, members of the Class have purchased Defendants' Coppertone sunscreen products under the false impression that they are receiving protection from all of the sun's harmful ultraviolet rays.

6.      Defendants further deceptively advertised, marketed and represented that their Coppertone sunscreen products provided the same degree or level of protection against UVA and UVB rays when, as Defendants knew or should have known, that a) an SPF designation, as defined and discussed in the allegations set forth below, does not measure UVA protection; (b) there was no universally accepted method for measuring UVA protection; and (c) existing research indicates that the level of protection provided against UVA rays by Defendants' Coppertone sunscreen products, particularly those with high SPF designations, is significantly less than the protection provided against the burning effects of UVB rays.

7.      Defendants have also deceptively advertised, marketed and represented that many of their Coppertone sunscreen products provide "waterproof" and/or "ultra sweatproof" protection against the sun's harmful ultraviolet rays when, as Defendants knew or should have known, that such protection was being measured against the burning effect of UVB rays, that the degree or level of UVA protection, to the extent provided, was significantly less than the protection provided against the burning effect of UVB rays, and that the protection provided by these products diminished, over a short period of time, after exposure to or immersion in water or

3

sweat and was, thus, not truly "waterproof" or "ultra sweatproof."

8.      Defendants have also deceptively advertised, marketed, and represented that many of their Coppertone sunscreen products are "sunblock lotions" when, as Defendants knew or should have known, that the level or degree of UVA protection, to the extent provided, was significantly less than the level of protection provided against the burning effect of UVB rays and that no protection was being provided against the longer UVA rays.  Thus, these products did not block all or anywhere close to all of the sun's harmful rays.

9.      Defendants' conduct alleged herein constitutes an unconscionable and deceptive commercial practice in violation of the New Jersey Consumer Fraud Act and a breach of express and implied warranties.  Plaintiffs seek an order enjoining such practices, as well as monetary damages.

<u>**PARTIES**</u>

10.      Plaintiff Steven Brody ("Brody") is a citizen of the State of New York. Brody purchased, *inter alia*, a Coppertone sunscreen product, specifically Coppertone Sport SPF 30 Sunblock Lotion ("Coppertone Sport") in the State of New York during the Class Period.  He purchased this Coppertone sunscreen product after viewing misleading statements and representations about the product which led him to believe that it provided complete protection against the sun's UVA and/or UVB rays as claimed on Defendants' labeling and advertising. Plaintiff purchased this Coppertone sunscreen product and paid a premium price for the product because he believed that the product provided the purported sunscreen benefits claimed in the labeling and advertising for this product.

11.      Plaintiff Chaim Hirschfeld ("Hirschfeld") is a citizen of the State of New York. Hirschfeld purchased, *inter alia*, a Coppertone sunscreen product, specifically Coppertone Sport

4

SPF 30 Sunblock Lotion ("Coppertone Sport") in the State of New York during the Class Period. He purchased this Coppertone sunscreen product after viewing misleading statements and representations about the product which led him to believe that it provided complete protection against the sun's UVA and/or UVB rays as claimed on Defendants' labeling and advertising. Plaintiff purchased this Coppertone sunscreen product and paid a premium price for the product because he believed that the product provided the purported sunscreen benefits claimed in the labeling and advertising for this product.

12.     Plaintiff Suzanne Grunstein is a citizen of the State of New Jersey. Grunstein purchased, *inter alia*, various Coppertone sunscreen products in the State of New Jersey during the Class Period.  She purchased Coppertone sunscreen products after viewing misleading statements and representations about the product which led her to believe that the products provided complete protection against the sun's UVA and/or UVB rays as claimed on Defendants' labeling and advertising.  Plaintiff purchased Coppertone sunscreen products and paid premium prices for the products because she believed that the products provided the purported sunscreen benefits claimed in the labeling and advertising for the products.

13.     Defendant Merck & Co., Inc. ("Merck & Co.") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business located at One Merck Drive, Whitehouse Station, New Jersey 08889.  At all relevant times, Merck & Co., on its own and/or through its subsidiaries, invented, developed, manufactured, distributed, labeled, advertised, promoted, and marketed, among other things, Coppertone sunscreen products in the State of New Jersey for sale to Plaintiffs and members of the Class.  Such activities included the creation, review and approval of labeling and advertising content for Coppertone sunscreen products, making decisions regarding media placement for Coppertone

advertising, and the dissemination of such content to Plaintiffs and members of the Class within the State of New Jersey and throughout the United States.

14.     Defendant MSD Consumer Care Inc. ("MSD Consumer Care") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business located at 3030 Jackson Avenue, Memphis, Tennessee 38151.  MSD Consumer Care is a wholly owned subsidiary of Defendant Merck & Co.  At all relevant times, MSD Consumer Care, on its own and/or through its parent, invented, developed, manufactured, distributed, labeled, advertised, promoted, and marketed, among other things, Coppertone sunscreen products for sale  in the State of New Jersey and throughout the United States.

15.     Merck Sharp & Dohme Corp. ("Merck Sharp & Dohme") as successor in interest to Schering Corporation, Schering-Plough Healthcare Products Sales Corporation, and Schering-Plough Healthcare Products Advertising Corporation, is a corporation organized and existing under the laws of the State of New Jersey and has its principal place of business located at One Merck Drive, Whitehouse Station, NJ 08889.  At all relevant times, Merck Sharp & Dohme, on its own and/or through its parent, invented, developed, manufactured, distributed, labeled, advertised, promoted, and marketed, among other things, Coppertone sunscreen products in the State of New Jersey.  Such activities included the creation, review and approval of labeling and advertising content for Coppertone sunscreen products, making decisions regarding media placement for Coppertone advertising, and the dissemination of such content to Plaintiffs and members of the Class within the State of New Jersey and throughout the United States.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is between citizens of different states, a class action has been pled in which the total

number of potential class members is in excess of 100, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant Merck & Co.'s and Defendant Merck Sharp & Dohme's corporate headquarters and principal places of business are located within this District.

18.     Venue is proper pursuant to 28 U.S.C. §1391(a) because, *inter alia*, a substantial part of the events giving rise to the claims occurred in this District and Merck & Co.'s and Defendant Merck Sharp & Dohme's principal places of business are located within the District.

## FACTUAL ALLEGATIONS

### I.    Introduction

19.     Sunlight reaches the Earth in heat waves called infrared, or in invisible rays, called ultraviolet (UV) rays.  Ultraviolet rays, in small amounts, act as a catalyst in the manufacture of Vitamin D in the body.  Although some UV rays are necessary for our well-being, over-exposure to UV rays can cause premature wrinkling, skin cancer, and photokeratitis, or snowblindness.  Research has shown that UV rays damage the DNA in skin cells, putting people at higher risk for skin cancer, and permanent eye damage.  UV radiation can also have a damaging effect on the immune system and premature aging of the skin, giving it a wrinkled, leathery appearance.

20.     Consumer sunscreen products, which are commonly referred to as sunscreens, purport to stop UVB and some UVA rays from reaching the skin.  They may do this in one of two ways.  First, a sunscreen may absorb ultraviolet radiation ("UVR"); that is, it forms a chemical barrier or layer on the skin.  Second, a sunscreen may reflect or scatter part or all of the UV rays away from the skin; that is, it forms a physical blocker.

21.     The SPF designation on sunscreen products indicates how much protection the

skin is afforded against sun burning, which is caused by UVB rays and possibly by some of the shorter length UVA rays.  Sunscreens with higher SPFs filter out more UV rays that cause burning than those with lower SPFs.  SPF15 sunscreen, for example, offers the skin 15 times its natural protection against sun burning.  How long this will be depends on the time of day, time of year, amount of reflection, cloud cover and the user's skin type.

22.     SPFs, however, do not measure the degree of protection, if any, afforded the skin against UVA rays that do not cause sunburn and the effect of these rays on the skin.  UVA rays can cause damage to the DNA in skin cells, are now known to cause photo-aging and are likely involved in the more aggressive types of skin cancer.

23.     The number of skin cancer cases has been rising dramatically over the years, due to increasing exposure to UV radiation from the sun.  More than 1 million new skin cancer cases are likely to be diagnosed in the U.S. this year. In 1980, an American's lifetime risk for contracting melanoma, the most deadly form of skin cancer, was 1 in 250.  Today, it is 1 in 55.  During this same period of time, U.S. sales figures for sunscreens have jumped from $18 million in 1972 to over $800 million in 2011.  Scientists have also found that melanoma, the most deadly and incurable form of skin cancer, is directly attributable to exposure to UVA radiation.

24.     Several published studies, including one conducted in 1998 by Brookhaven National Laboratories, a laboratory overseen by the U.S. Department of Energy, have found that there is a positive link between the use by consumers of sunscreens and the rise in melanoma.  The studies found that because sunscreens in fact do not block all of the sun's harmful rays as their labeling and advertising suggests, consumers are being given a false sense of security about the benefits of using sunscreens, and are staying out in the sun longer based on that false assumption.

25.    In a 1998 study published in the Journal of the National Cancer Institute, scientists found that the presence of moles predictive of melanoma was actually higher in children who used sunscreen, as opposed to those who did not use sunscreen or who wore protective clothing in the sun.   The researchers concluded that the data from the study "strengthen the hypothesis that the use of sunscreens increases the risk of melanoma."  Skin aging and cancer are delayed effects that don't usually show up for many years after the exposure.  Since the damage is not immediately visible, young people are often unaware of the dangers of tanning.  Physicians and scientists are especially concerned that cases of skin cancer will continue to increase as people who are now in their teens and twenties reach middle age.

26.    In 2000, the United Nations, through its International Agency for Research on Cancer, found that "[s]everal relevant epidemiological studies have shown significantly higher risks for melanoma in users of sunscreens than in non-users" and that the "protective effects of sunscreens can be outweighed by overexposure based on the false assumption that sunscreens completely abolish the adverse effects of UV-light."

27.    Defendants knew or should have known about these scientific studies, which have been conducted and published over the course of the last decade in leading medical journals by noted scientists at institutions such as the United Nations International Cancer Research Agency, the Brookhaven National Laboratory, and the Memorial Sloan-Kettering Cancer Center.

28.    Additionally, many of Defendants' Coppertone sunscreen products contain as an active ingredient Avobenzone which is used for protecting the skin against UVA rays. Avobenzone, however, has been found to quickly degrade after being exposed to sunlight.  One study has found that within fifteen minutes of exposure to sunlight, 36% of the exposed Avobenzone disintegrates.   Thus, the protective effects of Avobenzone against UVA rays

immediately diminish upon the exposure of human skin to sunlight.

## II.   Regulatory Background

29.     In 1993, the FDA issued *Sunscreen Drug Products for Over-the-Counter Human Use; Tentative Final Monograph*, 58 Fed. Reg. 28194 (May 12, 1993) ("TFM").  The TFM prohibits manufacturers from making labeling claims concerning UVA protection unless such claims, *inter alia*, were available in labeling prior to the beginning of the OTC drug review, *i.e.*, the labeling must not be "false or misleading in any particular."

30.     In the TFM, the FDA recognized the importance of accurate UVA labeling on sunscreen products, stating that "the agency believes that claims related to UVA protection are important information for consumers because UVA radiation has been shown to be harmful to the skin in that it contributes to both acute and chronic skin damage."  TFM, 58 Fed. Reg. 28194, 28209.

31.     In 1999, the FDA issued *Sunscreen Drug Products for Over-the-Counter Human Use; Final Monograph*, 64 Fed. Reg. 27666 (May 21, 1999) ("FM"), which addressed various aspects of labeling of sunscreen products.

32.     In the TFM and FM, the FDA made the following findings of fact with respect to UVA labeling claims:

(1) The term "sunblock" cannot be used on product labels. "The agency has decided not to include the term "sunblock" in the final monograph and now considers this term nonmonograph. The agency is concerned that the term "sunblock" on the label of sunscreen drug products will be viewed as an absolute term which may mislead or confuse consumers into thinking that the product blocks all light from the sun."  FM, 64 Fed. Reg. 27666 at 27680; and

(2) The term "waterproof" is not permitted in product labeling as it may be confusing or

misleading to consumers.  "The agency is concerned . . . that the term "waterproof". . . may be confusing or misleading to consumers because of the manner in which consumers may consider this term. The term "waterproof" is defined as "impenetrable to or unaffected by water." . . . . The agency believes that the term "waterproof" could be interpreted by consumers to describe something that is completely resistant to water regardless of time of immersion, a meaning which is not consistent with the meaning of the term in the Panel's recommended monograph. Therefore, the agency is not proposing the labeling claim "waterproof," but is proposing instead the term 'very water resistant.'"  TFM, 58 Fed. Reg. 28194 at 28228; FM, 64 Fed. Reg. 27666 at 27675-76.

33.     In 2001, the FDA stayed the effective date of the FM "until further notice." Pending the effective date of the FM, the FM provides that UVA labeling claims shall be governed by the TFM.  FM, 64 Fed. Reg. 27666, 27666-67.

34.     In 2005, Senator Christopher Dodd (D-Conn.) criticized the stay of the FM, citing his concern for the health and safety of consumers and the importance of providing consumers with "clear, accurate, and comprehensive sunscreen labeling as their first line of defense against skin cancer." *See* 151 Cong. Rec. S10,330 at S10,330-31 (daily ed. Sept. 22, 2005) (statement of Sen. Dodd).

35.     In 2005, Congress noted that the FDA had not issued any regulations after the stay of the FM was put into effect, "although skin cancer rates continue to rise, especially among young persons and women."  *See* Conference Report on S.830, FDAMA, 143 Cong. Rec. H10452 (Nov. 9, 1997); H.R. Rep. No. 109-255, 109th Cong., 1st Sess., Tit. VI at 102 (2005).

36.     In 2011, the FDA issued a final rule, *Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use; Final Rule*, 76 Fed. Reg. 35620

(June 17, 2011), stating, *inter alia*, that "we are identifying the terms "sunblock" "waterproof," and "sweatproof" as false and misleading, as we have stated in previous sunscreen rulemakings:

> • Sunblock (64 FR 27666 at 27679 and 27680)
>
> • Sweatproof (58 FR 28194 at 28227 through 28228)
>
> • Waterproof (58 FR 28194 at 28227 through 28228)

We have previously identified these claims as ones that would render a product misbranded but are addressing them again in this document because OTC sunscreen products currently marketed without approved applications continue to contain the claims."

37.     In addition, in its 2011 final rule, the FDA specifically prohibited the use of the claim "all day protection" on sunscreen labeling "regardless of SPF value or broad spectrum protection, without an approved application containing sufficient substantiation to support the claim."

### III.   Defendants' Labeling and Advertising Practices

38.     Defendants have spent millions of dollars marketing their sunscreen products in order to cultivate an image that their products protect the skin against all the sun's harmful rays and remain effective regardless of the amount of the products' exposure to or immersion in water or sweat.  Defendants, being fully aware of what their customers expect from their products, have concealed the fact that their sunscreen products do not provide complete protection against UVA and/or UVB rays as claimed.

39.     Defendants have deceptively labeled, advertised, marketed, and otherwise represented that many of their sunscreen products are "sunblock" lotions when, as Defendants knew or should have known, such products did not block all or anywhere close to all of the sun's harmful rays, particularly UVA rays.

40.    Defendants have also deceptively labeled, advertised, marketed and otherwise represented that many of their sunscreen products provide "waterproof" and/or "sweatproof" protection against all of the sun's harmful ultraviolet rays when, as Defendants knew or should have known, that the protection provided by Defendants' sunscreen products diminished, over time, after exposure to or immersion in water or sweat and was, thus, not truly water or sweat "proof" and that the protection provided was not against all the sun's rays.

41.    Defendants have also deceptively labeled, advertised, marketed and otherwise represented that their sunscreen products provide "all day protection" against UVA and UVB rays when, as Defendants knew or should have known, such protection diminished over time and after exposure to or immersion in water or sweat and thus did not truly constitute "all day protection."

42.    For example, through the use of materially misleading labeling and advertising, Defendants represented, directly and by implication, that their "Coppertone Sport" product protected the skin against all the sun's harmful UVA and UVB rays. The "Coppertone Sport" label has provided, in pertinent part:

> Coppertone Sport is equipment for your skin. It provides **all day protection** from the sun. This high performance, **ultra sweat proof sunblock** bonds to your skin on contact. It won't run into your eyes and cause stinging. Its dry lotion formula doesn't leave a greasy residue which could adversely affect your grip. Plus the hypoallergenic formula gives you **waterproof protection from the sun's harmful UVA and UVB rays**. PABA-free.
> \*       \*       \*
> SPF 30 **All Day Protection**. **ULTRA SWEAT PROOF. WATERPROOF.** DRY LOTION. **UVA/UVB SUNBLOCK**.

(Emphases added.)

43.    Defendants misled Plaintiffs and members of the Class by, among other things, representing that certain Coppertone sunscreen products contained the necessary active

ingredients to provide the skin with all day sunblock protection against harmful UVA rays.  In fact, "Coppertone Sport" used by Plaintiffs and members of the Class at best only protected the skin against UVA rays that caused sunburn.  Additionally, as alleged above the product is not truly water or sweat "proof" as labeled and advertised.

44.     Defendants have engaged in this misconduct despite a Federal Trade Commission Consent Order issued in 1997 concerning their marketing of their "Coppertone Kids" products and other children's sunscreen products.  Under the Consent Order, Defendants' predecessor agreed to refrain from "representing in any manner, directly or by implication . . . the length of time that a single application of the product will provide protection from the sun . . . or the efficacy of such product in providing protection against any harmful effect of sun exposure or ultraviolet radiation."  *See FTC/Schering-Plough Agreement Containing Consent Order to Cease and Desist*, File No. 942-3341, available at www.ftc.gov; Schering-Plough Consent Order, 62 Fed. Reg. 36514 (July 8, 1997).

45.     Were it not for the false and misleading claims set forth above, Plaintiffs and members of the Class would not have purchased Coppertone sunscreen products and/or would not have paid the premium prices charged for Coppertone sunscreen products, prices which were based in part on the purported sunscreen benefits claimed as described above.  Accordingly, Plaintiffs and members of the Class suffered an economic loss when they purchased Coppertone sunscreen products.

## CLASS ALLEGATIONS

46.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). The proposed Class consists of:

> All natural persons who purchased Coppertone sunscreen products in the United States of America including any territories and/or possessions which were labeled and/or advertised to provide protection against the sun's UVA and/or UVB rays.

47.   The members of the Class are so numerous that joinder is impracticable. At a minimum, thousands of persons purchased Coppertone sunscreen products during the Class Period.

48.   Plaintiffs' claims are typical of the claims of the entire Class as they purchased Coppertone sunscreen products based on false and misleading claims in the labeling and advertising of these products made by Defendants during the Class Period and sustained damages as a result of Defendants' conduct.

49.   Plaintiffs will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs have no interests antagonistic to those of other Class members.  Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.

50.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to whether:

a)   Defendants misled the Class in regard to the degree and duration of protection that their Coppertone sunscreen products provided against harmful UVA and/or UVB rays;

b)   Defendants misled the Class by disseminating standardized advertisements including product labels that falsely described the protection to be received from the sun's ultraviolet rays;

c)       Defendants failed to disclose to the Class the fact that their Coppertone sunscreen products do not provide protection against certain harmful UVA rays and to the extent they provide UVA protection such protection is significantly less than the protection provided against UVB rays as specified in the SPF designation;

d)       Defendants by the misconduct alleged herein, have engaged in unfair and unlawful business practices with respect to the advertising, marketing and sale of Coppertone sunscreen products;

e)       Defendants by the misconduct alleged herein, have engaged in unfair, deceptive, untrue or misleading advertising of the Coppertone sunscreen products;

f)       Defendants' advertisements, labels and other similar uniform representations regarding their Coppertone sunscreen products constituted affirmations of fact and/or promises that these products protected class members from UVA rays and that such protection was the same level or degree of protection provided by these products against the burning effects of UVB rays;

g)       Defendants' Coppertone sunscreen products in fact did not provide protection against the longer UVA rays and did not protect class members against UVA rays to the same degree or for the same duration as they did against UVB rays;

h)       Defendants' advertisements, labels and other similar uniform representations regarding the protection provided by their Coppertone sunscreen products against UVA and/or UVB rays form the basis of the bargain as between Defendants and members of the Class;

i)       Defendants' advertisements, labels, and other similar uniform representations regarding the protection provided by their Coppertone sunscreen products

16

against UVA and/or UVB rays constituted express warranties;

j)    Defendants' Coppertone sunscreen products failed to conform to Defendants' product specifications which were published and advertised to the Class;

k)    Defendants' Coppertone sunscreen products are not fit or suitable for the purposes intended;

l)    Defendants have acted and are about to act on grounds generally applicable to the Class thereby making it appropriate to render final injunctive or corresponding declaratory relief with respect to the Class;

m)    as a result of Defendants' misconduct, Plaintiffs and the Class are entitled to damages, restitution, equitable and other relief;

n)    Defendants' acts and practices in connection with the promotion and sale of Coppertone sunscreen products violated the New Jersey Consumer Fraud Act;

o)    Defendants' acts and practices constitute a breach of express warranty under N.J.S.A. 12A:2-313 *et seq.*;

p)    Defendants' acts and practices constitute a breach of implied warranty of merchantability under N.J.S.A. 12A:2-314 *et seq.*; and

q)    Defendants' acts and practices constitute a breach of implied warranty of fitness for a particular purpose under N.J.S.A. 12A:2-315 *et seq.*

51.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its

maintenance as a class action.

52.     Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

53.      Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

## FIRST CAUSE OF ACTION

### Violation of New Jersey Consumer Fraud Act

### (N.J.S.A. 56:8-1 *et seq.*)

54.     Plaintiffs re-allege and incorporate by reference paragraphs 1-53 as if each were set forth fully and completely herein.

55.     The New Jersey Consumer Fraud Act applies to Defendants' wrongful conduct as described herein because two of the Defendants, including Merck, the corporate parent, maintain their corporate headquarters and principal place of businesses within the state of New Jersey and one of the Defendants is incorporated in New Jersey.  In addition, a substantial part of the events giving rise to the allegations in this Complaint, as described herein, occurred in the state of New Jersey.

56.      Defendants, as corporations, companies or sellers, are each a "person" within the meaning of the New Jersey Consumer Fraud Act, and as such are prohibited from engaging in any unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation of fact.

57.      Defendants' conduct in connection with the promotion, advertising, marketing,

and sale of Coppertone sunscreen products as described above constitutes an unconscionable commercial practice and a deception, fraud, false promise and misrepresentation of material facts.

58.     Defendants' conduct in making false and misleading claims with respect to and on certain Coppertone sunscreen products is misleading and stands outside the norm of reasonable business practices.

59.     Plaintiffs and the members of the Class purchased the Coppertone sunscreen products after viewing misleading statements and representations in the labeling and advertising of these products which led them to believe that they provided complete protection against the sun's UVA and/or UVB rays. Plaintiffs and members of the Class purchased Coppertone sunscreen products and paid a premium price for the products because they believed that these products provided the purported sunscreen benefits claimed. Accordingly, Plaintiffs and the Class suffered an ascertainable loss as a result of having bought the Coppertone sunscreen products that were the subject of the Misleading Claims during the Class Period.

## SECOND CAUSE OF ACTION

### Unjust Enrichment and Common Law Restitution

60.     Plaintiffs re-allege and incorporate by reference paragraphs 1-53 of this Complaint as if each were set forth fully and completely herein.

61.     As a result of Defendants' wrongful and deceptive conduct, Plaintiffs and members of the Class have suffered a detriment while Defendants have received a benefit.

62.     In purchasing Coppertone sunscreen products Plaintiffs conferred a benefit upon Defendants by paying a premium price for the purchase of each product. Plaintiffs paid for these products with the expectation that they would receive a product that provided the benefits

claimed in the labeling and advertising of these products.

63.     In accepting the price paid by Plaintiffs for the Coppertone sunscreen products, while failing to provide the sun protection benefits claimed, Defendants retained a price benefit to which they were not entitled.

64.     Defendants should not be allowed to retain the enormous profits generated and profits realized from the sale of Coppertone sunscreen products that were unlawfully marketed, labeled, and promoted.

65.     Allowing Defendants to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

66.     Thus, Defendants are in possession of funds which were wrongfully obtained and retained from consumers and which should be disgorged as illegally gotten gains.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

### (N.J.S.A. 12A:2-313, *et seq.*)

67.     Plaintiff re-alleges and incorporates by reference paragraphs 1-59 of this Complaint as if each were set forth fully and completely herein.

68.     Plaintiff and each member of the Class entered into a contract with Defendants when each purchased Coppertone sunscreen products that were the subject of false and misleading claims.  The terms of the contract included the representations, affirmations and descriptions made by Defendants on the advertising, labeling and packaging materials of the Coppertone sunscreen products purchased, namely, the false and misleading claims.

69.     Defendants expressly warranted to Plaintiffs and each member of the Class that

20

the Coppertone sunscreen products purchased provided the benefits claimed in the labeling and advertising of these products.

70.   Defendants breached their express warranties to Plaintiffs and each member of the Class because the products purchased do not provide the sun protection benefits claimed in the labeling and advertising of these products.

71.   The express warranties made by Defendants were a part of the basis for Plaintiffs' and the Class members' purchase and use of such Coppertone sunscreen products.

72.   As a direct and proximate result of the aforementioned breach of express warranty, Plaintiffs and members of the Class suffered economic loss.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantibility

### (N.J.S.A. 12A:2-314 *et seq.*)

73.   Plaintiff re-alleges and incorporates by reference paragraphs 1-59 and 67-72 of this Complaint as if each were set forth fully and completely herein.

74.   Defendants impliedly warranted that Coppertone sunscreen products provided the benefits as claimed in the labeling and advertising of these products, are fit for the ordinary purposes for which such sunscreen products are intended, and conform to the promises and affirmations of fact made on the product labeling.

75.    Defendants breached their implied warranty to Plaintiffs and each member of the Class because these Coppertone sunscreen products do not provide the sun protection benefits as impliedly represented in the labeling and advertising of these products, are not fit for the ordinary purpose for which these Coppertone sunscreen products are intended, and do not  conform to the promises and affirmations of fact made in the labeling and advertising of

21

these products.

76.     As a direct and proximate result of the aforementioned breach of implied Warranty of merchantability, Plaintiffs and members of the Class suffered economic loss.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose

### (N.J.S.A. 12A:2-315 *et seq.*)

77.     Plaintiff re-alleges and incorporates by reference paragraphs 1-59 and 67-76 of this Complaint as if each were set forth fully and completely herein.

78.     Defendants impliedly warranted that Coppertone sunscreen products provide the benefits in the labeling and advertising of these products, and are fit for the particular purpose for which these products are required.

79.     When Defendants contracted with Plaintiffs and members of the Class to purchase the Coppertone sunscreen products, Defendants had reason to know that Plaintiffs and members of the Class purchased and used these Coppertone sunscreen products to obtain the benefits claimed.

80.     In addition, when Defendants contracted with Plaintiffs and members of the Class to purchase Coppertone sunscreen products, Defendants had reason to know that Plaintiffs and members of the Class were relying on Defendants' skill or judgment to provide the benefits claimed.

81.     Defendants breached their implied warranty of fitness for a particular purpose when they marketed and sold these Coppertone sunscreen products to Plaintiffs and members of the Class which did not have the sun protection benefits as represented in the labeling and advertising of these products.

82.     As a direct and proximate result of the aforementioned breach of implied warranty of fitness for a particular purpose, Plaintiffs and members of the Class suffered economic loss.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

(a) determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel, Abraham, Fruchter & Twersky, LLP as Class counsel;

(b) awarding Plaintiffs and the proposed Class members their damages, trebled;

(c) awarding permanent injunctive relief restraining Defendants from continuing the unlawful practices set forth herein;

(d) awarding restitution to Plaintiffs and the proposed Class members;

(e) awarding attorneys' fees and costs; and

(f) granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all claims so triable.


DATED: July 31, 2012


s/*Gary S. Graifman*
Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Rd., Suite 200
Chestnut Ridge, NY 10977
Tel: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com

23

Mitchell M.Z. Twersky, Esq.
Ximena R. Skovron, Esq.
**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com
xskovron@aftlaw.com

*Attorneys for Plaintiffs*