IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY, CHAIM HIRSCHFELD, and SUZANNE GRUNSTEIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs. | Civil Action No. 12-cv-4774-PGS-DEA |
| MERCK & CO, INC. f/k/a SCHERING-PLOUGH CORPORATION, MSD CONSUMER CARE, INC. f/k/a SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., MERCK SHARP & DOHME CORP., AS SUCCESSOR IN INTEREST TO SCHERING CORPORATION, SCHERING-PLOUGH HEALTHCARE PRODUCTS SALES CORPORATION, AND SCHERING-PLOUGH HEALTHCARE PRODUCTS ADVERTISING CORPORATION,<br><br>Defendants | |

**OBJECTIONS OF FATIMA DOREGO TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR THROUGH COUNSEL**

## I. INTRODUCTION AND CLASS MEMBERSHIP

Comes now, class member, Fatima Dorego ("Objector"), by and through her counsel, hereby: (i) files these Objections to the Proposed Class Action Settlement (the "Proposed Settlement") which is based on the "Class Action Settlement Agreement" (the "Settlement Agreement"); (ii) object to Class Counsel's notice of motion and motion for attorneys' fees; (iii) gives notice of her counsel's intent to appear at the February 20, 2013 settlement hearing; and (iv) requests an award of incentive fees for serving as an unnamed class member objector.

Objector represents to the court that she is a Class Member who purchased the Coppertone product as defined in the Settlement Agreement (see Declaration attached as Exhibit A). Therefore, Objector is qualified to make a claim for the proposed relief as set forth in the notice.

## II. OBJECTIONS

### A. THE SETTLEMENT IS NOT FAIR AND REASONABLE TO CLASS MEMBERS

It is well established that the court has a duty under Rule 23 of the Federal Rules of Civil Procedure as the guardian of the absent class members' interests to independently determine whether the settlement agreement is fair, reasonable, and in the best interests of the class.

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). In order to approve a proposed settlement, the court must be satisfied that the agreement is "fair, adequate, and reasonable," and not the product of fraud or collusion. *Stoetzner* v. *United States Steel Corp.,* 897 F.2d 115, 118 (3d Cir.1990); *Walsh* v. *Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir.1983); *Greenfield* v. *Villager Industries, Inc*., 483 F.2d 824, 833 (3d Cir.1973). The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees

are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id. This rule has been read as a requirement for the court to " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995). (emphasis added) The settlement here is not fair to class members because: it contemplates payment to other organizations before any payment is made to class members; payment of attorneys' fees to class counsel even prior to any receipt of benefits by class members, cy pres distributions instead of pro rata distribution to class members; and cy pres distributions to organizations that are not related to the interests of the class members.

**1. PROPOSED SETTLEMNET UNFAIRLY DEPRIVES CLASS MEMBERS OF BENEFITS OF THE SETTLEMENT**

The settlement is not fair as it contemplates a payout to multiple organizations before any payout to class members. The first $1 million dollars of a settlement which is potentially only worth $3 million is to be paid equally to three different legal service organizations: Legal Aid Foundation of Los Angeles, Legal Services of New York City, and Legal Services of New Jersey. If only very few claims are made as part of the claims process, the net value of the

settlement is likely to be only $3 million, because this is the minimum payment to be made by Defendant. The number of claims could be small because often consumers do not retain proof of purchase of items such as sunscreens. Proof is also accepted as a photograph of the product. However, this does not solve the situation where a consumer has completely consumed and trashed the empty product. Under the circumstances, the Proposed Settlement is not fair to class members where 1/3rd of the value of the entire fund is being eroded even before any distributions are made to class members. This is patently unfair to class members.

**2. DEFENDANTS' AGREEMENTS TO CHANGE LABELING OF PRODUCTS IS NOT A BENEFIT TO CLASS MEMBERS**

The Proposed Settlement contemplates a change in labeling of the products sold by defendant. However, this offers very little or no benefit to consumers who were previously misled by Defendant's misleading labeling. This supposed "benefit" of the Proposed Settlement does not add any value to the members of the class.

**3. THE CY PRES DISTRIBUTION IS INADEQUATE**

The Proposed Settlement contemplates a *cy pres* distribution to the same three legal service organizations mentioned above. The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient. Instead, the funds must be used in such a way that best serve the original intent of the settlor or testator. *Id.* at 1195. This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." *Id*. Courts within this Circuit have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class

members or "others similarly situated, e.g. *future class members* who engage in future transactions of the type involved in the class litigation." *Id* at 1195. In *Dennis* v. *Kellogg Co.* 697 F.3d 858 (9th Cir., 2012), the court held that, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id* at 5 (quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011)).

In the third circuit, generally, "the court should consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case." *Schwartz* v. *Dallas Cowboys Football Club, Ltd.*, 362 F. Supp 2d 574, 576 (2005, E.D Pennsylvania) citing to *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir.2002). In *Schwartz* v. *Dallas Cowboys Football Club, Ltd.*, the court rejected a cy pres distribution proposed by the plaintiff therein finding, among others, that distribution to a "student legal clinic is not needed to promote the policies of the Sherman and Clayton Acts, the underlying statutes at issue in this case." Id. 576.

Here, the lawsuit seeks to right the wrongs of Defendants' fraudulent and deceptive advertising and misleading business practices. The proposed cy pres distribution here is to legal aid organizations. Much like *Schwartz* v. *Dallas Cowboys Football Club, Ltd.*, the cy pres distribution does not serve to promote the policies of preventing fraudulent and deceptice advertising and misleading business practices. Therefore, the *cy pres* distribution is not adequate.

**B. THE REQUESTED ATTORNEYS' FEES IS EXCESSIVE**

There are two basic methods for calculating attorneys' fees-the percentage-of-recovery method and the lodestar method. Each method has distinct advantages for certain kinds of

actions. The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure. The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).

     The $2 million attorney fee request is excessive under the percentage of fund method of calculation.  Class counsel spuriously claims that the $2 million in attorneys' fees being claimed is reasonable when compared against the size of the fund created and the number of persons benefited."  Contrary to counsel's claim, the attorneys' fee award of $2 million would be excessive given the value being provided to class members under the Proposed Settlement.  Class counsel spuriously argues that the $2 million of attorneys' fees being sought is 33 1/3% of the minimum value of the Proposed Settlement.  To substantiate this creative argument, class counsel claims that the minimum benefit to the class is $6 million (the sum of $3 million minimum class value, $ 1 million in administrative costs, and $2 million in attorneys' fees).  Class counsel's inclusion of the attorneys' fees of $2 million and administrative costs of $1 million in the "value" of the Proposed Settlement clearly overstates the benefit being provided to class members.  Attorneys' fees being paid to class counsel is not a benefit to class members.  Similarly, the administrative costs of any proposed settlement only serves to decrease the benefit available to class members.  If the $2 million in attorneys' fees and $1 million in administrative costs are backed out from the "size of the fund," it is clear that the fund is only $3 million.  In fact, there isn't even a $3 million fund available to class members.  The real minimum value of

the Proposed Settlement is closer to $2 million because the Proposed Settlement provides that $1 million will be paid to 3 different legal services organizations. Therefore, the size of the fund or the minimum value to class members is really only $2 million. Using a percentage of the fund calculation, this would mean that class counsel is recovering 100% of the value of the fund, which is obscenely excessive. The $2 million would only be reasonable if the entire $10 million in settlement funds were completely paid to class members. Because it is not possible to fully ascertain the value of the Proposed Settlement until all claims are made. Therefore, the decision regarding the amount of attorneys' fee to class counsel must be made after all claims are filed.

In *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998), the district court found that "the settlement was most closely aligned to the common fund paradigm and that a percentage-of-recovery calculation was the appropriate measure of the attorneys' fee award." The district court "created a bifurcated award designed to compensate class counsel based on the "guaranteed minimum" benefit created under the settlement, while at the same time tying the second part of the award to the class's response rate, in order to create an incentive for class counsel's continued participation in the remediation process." The Court of Appeal agreed with "both the method of calculation selected by the court and the structure of the fee award it crafted," however, the court remanded the matter on the amount of attorneys' fees to be awarded. Here Objectors submit that a similar two tired approach should be used to determine the attorneys' fees to be awarded. The court should determine the true minimum value of the Proposed Settlement (which is $2 million) and thereafter award attorneys' fees based on this value. After the entire value of the Proposed Settlement is known, based on the number of claims made, the remainder of attorneys' fees can be awarded to class counsel.

**C. JOINDER IN ALL OTHER OBJECTIONS.**

This Objector joins in all other meritorious, bona fide objections filed with the Court by other absent class members.

## III. CONCLUSION

WHEREFORE, this Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C. Award an incentive fee to this Objector for her service in improving the settlement for the class, if any.

Respectfully submitted,

Dated: January 31, 2013

By: ____________________

Forrest S. Turkish
Law Office of Forrest S. Turkish
595 Broadway
Bayonne, NJ 07002
Phone: (201) 339-8866
Fax: (201) 339-8456
Email: fsturkish@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of New Jersey by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

Forrest S. Turkish
Attorney for Objector

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

STEVEN BRODY, CHAIM HIRSCHFELD, and SUZANNE GRUNSTEIN, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

MERCK & CO, INC. f/k/a SCHERING-PLOUGH CORPORATION, MSD CONSUMER CARE, INC. f/k/a SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., MERCK SHARP & DOHME CORP., AS SUCCESSOR IN INTEREST TO SCHERING CORPORATION, SCHERING-PLOUGH HEALTHCARE PRODUCTS SALES CORPORATION, AND SCHERING-PLOUGH HEALTHCARE PRODUCTS ADVERTISING CORPORATION,

Defendants

Civil Action No. 12-cv-4774-PGS-DEA

**DECLARATION OF FATIMA DOREGO**

I, Fatima Dorego, declare:

1. I am a member of the class contemplated in the pending class action known as *Steven Brody, et al. vs. Merck & Co, Inc., et al.,* Case No. 12-cv-4774 (PGS).

2. For privacy purposes, I redact my residence address as San Diego County, California, and my telephone number as (xxx) xxx-1863. My attorney has the missing data and can provide it upon request, and can contact me.

3. I purchased the following Coppertone products: Coppertone Sport and Coppertone Tanning Oil.

I declare under penalty of perjury that the above-statement is true and correct to the best of my knowledge. Executed on January 31, 2013.

Fatima Dorego, Declarant