Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*

***Counsel for Plaintiffs***

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY et al., on behalf of themselves and all others similarly situated, | Case No. 3:12-cv-04774-PGS-DEA |
| Plaintiff, | |
| vs. | *DOCUMENT ELECTRONICALLY FILED* |
| MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, et al., | |
| Defendants. | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO OBJECTIONS AND REQUEST FOR EXCLUSION

# TABLE OF CONTENTS

**Page(s)**

I.     The Court May Approve the Settlement Notwithstanding the Three
       Objections Received, Which Are Not Substantial in Number ........................1

II.    The *Cy Pres* Awards are Reasonable ...........................................................3

III.   The Requested Attorneys' Fees and Expense Award is Reasonable ..............9

IV.    The Named Plaintiffs Fairly and Adequately Protect All Class
       Members' Interests .......................................................................................16

CONCLUSION ......................................................................................................19

i

# TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

*Blessing v. Sirius XM Radio Inc.*,
     2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012) ...................................1

*Bredbenner v. Liberty Travel, Inc.*,
     2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011).....................................10

*Cassese v. Williams*,
     2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012) ...................................1

*Corel Corp. Inc. Sec. Litig.*,
     293 F. Supp. 2d 484 (E.D. Pa. 2003)...........................................................11

*DeHoyos v. Allstate Corp.*,
     240 F.R.D. 269 (W.D. Tex. 2007).................................................................14

*Dennis v. Kellogg Co.*,
     697 F.3d 858 (9th Cir. 2012) .........................................................................6

*Dewey v. Volkswagen AG*,
     681 F.3d 170 (3d Cir. 2012) .................................................................. 17, 19

*Eddings v. Health Net, Inc.*,
     2013 U.S. Dist. LEXIS 9185 (C.D. Cal. Jan. 16, 2013)..................................7

*Glen Ellyn Pharm., Inc. v. La Roche-Posay, LLC*,
     2012 U.S. Dist. LEXIS 23936 (N.D. Ill. Feb. 23, 2012).................................4

*Girsh v. Jepson*,
     521 F.2d 153 (3d Cir. 1975) ..........................................................................3

*Gunter v. Ridgewood Energy Corp.*,
     223 F.3d 190 (3d Cir. 2000) ..........................................................................3

*Hall v. AT&T Mobility LLC*,
     2010 U.S. Dist. LEXIS 109355 (D. N.J. Oct. 13, 2010)...........................9, 18

*Heekin v. Anthem, Inc.*,
    2012 U.S. Dist. LEXIS 160864 (S.D. Ind. Nov. 9, 2012)...............................7

*In re Budeprion XL Mktg. & Sales Litig.*,
    2012 U.S. Dist. LEXIS 91176 (E.D. Pa. July 2, 2012) ..................... 3, 11, 13

*In re Checking Account Overdraft Litig.*,
    2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14, 2012)...............................2

*In re Ferrero Litig.*,
    2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012)................................11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .........................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010) .........................................................2

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012) .......................................................................4

*In re Johnson & Johnson Derivative Litig.*,
    2012 U.S. Dist. LEXIS 153978 (D.N.J. Oct. 26, 2012)...............................17

*In re Linerboard Antitrust Litig.*,
    2008 U.S. Dist. Lexis 77739 (E.D. Pa. Oct. 3, 2008)...................................5

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ......................................................................18

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    103 Fed. Appx. 695 (3d Cir. 2004).............................................................10

*In re Tricor Indirect Purchaser Antitrust Litig.*,
    2009 U.S. Dist. LEXIS 101362 (D. Del. Oct. 28, 2009)...............................1

*In re Wells Fargo Sec. Litig.*,
    991 F. Supp. 1193 (N.D. Cal. 1998).............................................................6

*Jacobson v. Celgene Corp.*,
  2010 U.S. Dist. LEXIS 36714 (D.N.J. Apr. 14, 2010)..................................18

*Klier v. Elf Altochem N. Am. Inc.*,
  658 F.3d 468 (5th Cir. 2011) ........................................................................8, 9

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008)..................................................................2

*McGee v. Cont'l Tire N. Am., Inc.*,
  2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009) ...................................11

*McNair v. Synapse Group, Inc.*,
  672 F.3d 213 (3d Cir. 2012) ..........................................................................16

*Mirra v. Holland America Line*,
  751 A.2d 138 (App. Div. 2000)......................................................................18

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) .........................................................................6

*N.J. Transit Corp. v. Harsco Corp.*,
  497 F.3d 323 (3d Cir. N.J. 2007)...................................................................18

*Park v. Thomson Corp.*,
  633 F. Supp. 2d 8 (S.D.N.Y. 2009) ................................................................2

*Perkins v. Am. Nat'l Ins. Co.*,
  2012 U.S. Dist. LEXIS 95039 (M.D. Ga. July 10, 2012) ...............................4

*Petrovic V. Amoco Oil Corp.*,
  200 F.3d 1140 (8th Cir. 1999) .......................................................................18

*Rhodenbaugh v. CVS Pharmacy, Inc.*,
  372 S.W.3d 922 (Mo. Ct. App. 2012) .............................................................1

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ............................................................... 2, 12, 16

*Synfuel Techs. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ........................................................................15

**Statutes**

N.J. Stat. § 2A:14-1 ..................................................................................................18

N.J. Stat. §12A:2-725 ..............................................................................................18

**Other Authorities**

Hartman, A., *FDA's Minimal Regulation of Cosmetics and the*
    *Daring Claims of Cosmetic Companies That Cause*
    *Consumers Economic Harm*, 36 W. St. U. L. Rev. 53 (2008) .....................13

Newberg on Class Actions § 11.20 (4th ed. 2011) ....................................................3

**Regulations**

*Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-*
    *Counter Human Use*, 76 Fed. Reg. 35620 (June 17, 2011)..................................14

Pursuant to paragraph 7 of the Preliminary Approval Order entered in this action, Plaintiffs Steven Brody, Chaim Hirschfeld and Suzanne Grunstein herein respectfully submit this supplemental brief in response to the objections and request for exclusion received with respect to the Settlement.[1]

## I.   The Court May Approve the Settlement Notwithstanding the Three Objections Received, Which Are Not Substantial in Number

In a settlement involving at least tens of thousands of consumers, it is striking that only three objections to the Settlement have been submitted, along with only one request for exclusion.  Notably, all three of the objections are made by "professional" and serial objectors, who have objected to numerous class actions in recent years.[2]  As is often the case with professional objectors, the

---

[1]  All capitalized terms from the Settlement Agreement and Plaintiffs' briefs in support of preliminary and final approval are incorporated by reference herein.

[2]  Objector Batman has filed objections in the following actions:

- *Cassese v. Williams*, No. 11-4333, 2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012);

- *Blessing v. Sirius XM Radio Inc.*, No. 11-3696, 2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012);

- *In re Tricor Indirect Purchaser Antitrust Litig.*, No. 05-360-SLR, 2009 U.S. Dist. LEXIS 101362 (D. Del. Oct. 28, 2009); and

- *Rhodenbaugh v. CVS Pharmacy, Inc.*, 372 S.W.3d 922 (Mo. Ct. App. 2012).

objections lodged in this case are baseless, and serve no other purpose than to hold

up the Settlement.

As Judge King eloquently explained when Objector Dorego attempted

similar tactics to hold up the settlement in *In re Checking Account Overdraft*

*Litigation*:

> [P]rofessional objectors can levy what is effectively a tax on class
> action settlements, a tax that has no benefit to anyone other than to the
> objectors. Literally nothing is gained from the cost: Settlements are
> not restructured and the class []gains nothing. . . . Should these or any
> other Objectors choose to persist in their objections in order to tie up
> the execution of this Settlement and further delay payment to the
> members of the Settlement Class, the Court will consider additional
> measures to make sure that the members of the Settlement Class are
> not further harmed as a result.

No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384, at *45-46 (S.D. Fla. Feb.

14, 2012).

---

Objector Beck's attorneys, Robert E. Margulies and Jeffrey Weinstein, have filed
objections in the following cases, including two in this Circuit raising arguments
strikingly similar to those raised here, but which were overruled:

- *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 284, 328 (3d Cir. 2011);

- *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) (Weinstein
  and Margulies representing objector Christine Weinstein);

- *Park v. Thomson Corp.*, 633 F. Supp. 2d 8 (S.D.N.Y. 2009) (Weinstein
  representing objector Bonner Walsh, his law partner); and

- *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210 (S.D.N.Y. 2010)

Indeed, following Judge King's condemnation of baseless objections and the imposition of an appeal bond, Ms. Dorego withdrew her objection to that settlement. *In re Checking Account Overdraft Litig.*, No. 08-23323 (S.D. Fla.) (Docket No. 121).

Nevertheless, and notwithstanding their status as "professional" objectors, the objections of Batman, Beck and Dorego (together, the "Objectors") should not prevent approval of the Settlement. Indeed, the reaction of the class to a settlement is a key factor in determining whether the Settlement should be approved. *See Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Here, only three out of at least tens of thousands of class members object to the Settlement – "such a miniscule number" of objectors – weighs in favor of approval of the Settlement. *In re Budeprion XL Mktg. & Sales Litig.*, No. 11-55674, 2012 U.S. Dist. LEXIS 91176, at *35-38 (E.D. Pa. July 2, 2012) (overruling objections of only three class members, including the Texas Attorney General, as "miniscule" in light of class size) (citations omitted).

## II.    The *Cy Pres* Awards are Reasonable

"Courts are not in disagreement that *cy pres* distributions are proper in connection with a class settlement." William B. Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 11.20 (4th ed. 2011). Courts in this Circuit and others routinely approve similar *cy pres* distributions to the one

3

proposed here. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 117-

18 (D.N.J. 2012) (approving *cy pres* distributions to two non-profit organizations,

including a consumer advocate group); *see also Perkins v. Am. Nat'l Ins. Co.*, No.

05-cv-100, 2012 U.S. Dist. LEXIS 95039, at *10-16 (M.D. Ga. July 10, 2012)

(consumer class action settlement approving *cy pres* distribution to, *inter alia*, the

Mercer University School of Law and The Georgia Legal Services Foundation);

*Glen Ellyn Pharm., Inc. v. La Roche-Posay, LLC*, No. 11 C 968, 2012 U.S. Dist.

LEXIS 23936, at *1, 3-4 (N.D. Ill. Feb. 23, 2012) (approving a *cy pres* award to,

*inter alia*, the Legal Assistance Foundation of Metropolitan Chicago).

      In this action, the Settlement Agreement provides for a guaranteed *cy pres*

award to three legal aid organizations: Legal Services of New Jersey, Legal

Services of New York City, and the Legal Aid Foundation of Los Angeles.  Each

of these organizations maintains a consumer affairs division that actively protects

consumer interests, thus benefitting Class members.  The parties selected these

legal aid organizations because they perform significant work on behalf of

consumers in a wide range of areas and, as is clear from their respective

declarations, their work has a beneficial impact on consumers nationwide.[3]

---

[3] *See* Declaration of Edward Josephson of Legal Services New York City in
Support of the Joint Motion for Final Approval and Responding to Objections
("Josephson Decl.") ¶¶7, 11, 15-45; Declaration of Silvia R. Argueta on Behalf of
Legal Aid Foundation of Los Angeles ("Argueta Decl.") ¶¶5, 9-12; Declaration of

The parties chose organizations located in New Jersey, New York and California because these locations have a geographical nexus to the litigation. Specifically, New Jersey is the venue in which the instant action was brought, as well as the state in which Plaintiff Grunstein resides;  New York is the state in which Plaintiff Brody and Plaintiff Hirschfeld reside; and Los Angeles is the venue of the *Sunscreen Cases* where the vast majority of the nine-year litigation took place.  In addition, a substantial number of Class members reside in these locations.

Moreover, courts have "broad equitable powers" to distribute *cy pres* funds, and permit *cy pres* awards that serve public interests, whether or not such interests have any direct or indirect relationship to the specific law or subject matter of the litigation.  *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. Lexis 77739, *11 (E.D. Pa. Oct. 3, 2008).  Nevertheless, the *cy pres* recipients in this Settlement are directly related to the purpose of this litigation, and clearly meet the standard advocated by Objector Dorego.

In challenging the *cy pres* awards in this case, however, Objector Dorego wrongly claims that Legal Services of New Jersey, Legal Services of New York, and the Legal Aid Foundation of Los Angeles "will not serve to promote the

---

Melville Miller of Legal Services New Jersey in Support of Final Approval ("Miller Decl.") ¶¶8-13, 18-20.

policies of preventing fraudulent and deceptive advertising and misleading

practices."  Dorego Obj. at 5.  This bald assertion is not supported by any facts

regarding the recipients, and is in fact directly contradicted by the declarations

submitted on behalf of the recipients.

The few cases cited by Objector Dorego, most of which are from outside of

this Circuit, actually support approval of the Settlement, including the *cy pres*

awards.  For example, Objector Dorego's reliance on *In re Wells Fargo Sec. Litig.*,

991 F. Supp. 1193, 1194-95 (N.D. Cal. 1998) is misplaced because it states only

that courts "must be careful" to ensure that a *cy pres* recipient will "indirectly"

serve the interests of the class members.  Dorego Obj. at 4.  Here, the *cy pres*

recipients – Legal Services of New Jersey, Legal Services of New York, and the

Legal Aid Foundation of Los Angeles – *directly* serve the interests of consumers.

Indeed, the *cy pres* recipients in this settlement meet even the most stringent test,

set forth by the Ninth Circuit, which requires a "driving nexus between the plaintiff

class and the *cy pres* beneficiaries."  Dorego Obj. at 5 (citing *Dennis v. Kellogg

Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d

1034, 1038 (9th Cir. 2011))).  In fact, District courts in the Ninth Circuit have

applied *Kellogg* in circumstances similar to those here, and expressly upheld *cy

pres* awards to legal aid organizations that, like the Legal Aid organizations here,

maintain divisions that seek to redress wrongs related to the underlying claims.

*See Eddings v. Health Net, Inc.*, No. 10-1744, 2013 U.S. Dist. LEXIS 9185, at *16-18 (C.D. Cal. Jan. 16, 2013) (in a wage and hour class action, approving cy pres award to Legal Aid Society's Employment Law Center).

It should be noted, however, that this stringent Ninth Circuit test has not been adopted by this Circuit, or any other Circuit. *See Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 160864, at *12-13 (S.D. Ind. Nov. 9, 2012) (addressing the *Kellogg* standard, stating "[t]he law in the Seventh Circuit is not so restrictive")) (citing cases). For example, in *Anthem*, a securities class action, the court approved a *cy pres* award to a non-profit group called the Eskanazi Health Foundation, to "help open and operate a new health care campus on the Indiana University-Purdue University Indianapolis campus." *Id*. at *9-10 & n.5. The court rejected objectors' arguments that the *cy pres* award was inappropriate "because the recipient is not related to the underlying claims in the case, nor does it benefit non-claimant class members." *Id.* at *12. Instead, the court held that "the courts' broad equitable powers now permit the use of funds for other public interest purposes by education, charitable, and other public service organizations." *Id.*

In challenging the *cy pres* awards in this Settlement, the Objectors also wrongly claim that such awards will necessarily be at the expense of Class members. Beck Obj. 2-3; Batman Obj. 5. Contrary to the Objectors'

mischaracterizations of the Settlement, however, the *cy pres* distributions in this Settlement will not impact or reduce the amount of any Class members' recovery unless and until Class members' claims exceed $9 million.  Based on the testimony of plaintiff's expert Tom Sidun, Vice President of Settlement Administration with Boston Financial's Settlement Administration Solutions division, who addressed the Court during the preliminary approval hearing, this threshold is unlikely to be reached because the claims or "take" rate in this case was expected to be at approximately 0.5%, which would equate to claims totaling approximately $1,702,500.  Prelim. App. Hearing Tr. 26.  In fact, the *cy pres* awards are designed to increase the amount to be paid by defendants specifically in light of this expected low take rate.

Moreover, distributing unclaimed Settlement funds on a *pro rata* basis to Class members who have made claims would be patently unfair.  An additional *pro rata* distribution, as proposed by the Objectors, might result in certain Class members receiving more than the amount of their damages under the proposed Settlement.  *See Klier v. Elf Altochem N. Am. Inc.*, 658 F.3d 468, 474 (5th Cir. 2011)  (additional *pro rata* distributions to class members are improper "where an additional distribution would a provide a windfall to class members.").

In arguing against the *cy pres* awards, the Objectors misstate the Fifth Circuit's holding in *Klier*.  In *Klier*, the Fifth Circuit overturned *cy pres*

8

distributions that were ordered by the district court *sua sponte*, and which were not part of the agreed settlement. *Id.* at 475 (stating that "the court cannot modify the bargained-for terms of the settlement agreement . . . once approved its terms must be followed by the court and the parties alike."). A key point for the court was that the settlement expressly provided that remaining funds should be distributed to other subclasses. *Id.* at 474. Here, unlike in *Klier*, the parties have specifically bargained for the *cy pres* distributions contemplated in the Settlement Agreement.

Ultimately, as the court recognized in *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355, at *39-40 (D. N.J. Oct. 13, 2010), the proposed *cy pres* awards are "significant terms of a heavily negotiated and well thought out Settlement Agreement … better left undisturbed."

## III. The Requested Attorneys' Fees and Expense Award is Reasonable

As detailed in Plaintiffs' brief in support of final approval of the Settlement, the attorneys' fees and expenses requested by Plaintiffs are reasonable under the factors enunciated by the Third Circuit in *Gunter* and *Prudential*. Pls. Br. Supp. Mot. Final App. 28-39. The requested fees and expenses award represents 33 1/3% of the minimum total cash Settlement value obtained by Settlement Class Counsel from Defendants for the benefit of Class members. The total value of the minimum Settlement fund is $6 million, calculated as follows: $3 million minimum cash available to pay Class members' claims with any unpaid cash

9

payable to *cy pres*, approximately $1 million in notice and associated administrative costs, and $2 million in attorneys' fees and expenses, subject to the Court's approval.

Objectors argue that including requested attorneys' fees and expenses and notice costs in the total Settlement value inflates the value of the Settlement. Objectors' position, however, is contrary to the method set by the Third Circuit to calculate the total settlement value in a common fund case. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 Fed. Appx. 695, 698 (3d Cir. 2004) (the benefit that class counsel created for the class includes cash available for claims, requested attorneys' fees and expenses, notice costs and administrative expenses).

Plaintiffs' request for a fee constituting 33 1/3% of the minimum funds obtained by Class Counsel falls squarely in the middle of the range of percentage fees of 19% to 45% that have been previously awarded by courts in the Third Circuit. *See Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at *59 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund.") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)). Furthermore, the reasonableness of Plaintiffs' fee request is supported by Class Counsel's lodestar, as it represents a negative multiple of .76. *See* Pls. Br. Supp. Mot. Final App. 38-39.

10

In addition, the requested fees and expenses award is consistent with awards in other class action settlements involving similar sized common funds.  *See* Pls. Br. Supp. Mot. Final App. 35-36; *McGee v. Cont'l Tire N. Am., Inc*., No. 06-6234, 2009 U.S. Dist. LEXIS 17199, at *47 (D.N.J. Mar. 4, 2009) (in a consumer class action that settled after two years of litigation, the court awarded attorneys' fees constituting between 32% of the $5 million minimum and 21% of the $8 million maximum settlement fund); *In re Ferrero Litig.*, No. 11-CV-00205-H-KSC, 2012 U.S. Dist. LEXIS 94900, at *10-12 (S.D. Cal. July 9, 2012) (in a consumer class action settlement providing a $550,000 settlement fund and injunctive relief in the form of labeling and advertising changes to Nutella products, the court awarded $1 million in attorneys' fees); *Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003) (33.3% of $7 million settlement awarded in attorneys' fees).

Class Counsel's substantial work in this case, which extends over nine years of hard-fought litigation, and includes a successful appeal of the denial of class certification, more than justifies the requested award.  *See Budeprion*, 2012 U.S. Dist. LEXIS 91176, at *66 ("If the only factor relevant to the amount of attorneys' fees awarded was the monetary recovery of the Class, attorneys would be less inclined to risk bringing necessary litigation that might not result in a big payday for individual Class members.").

11

Objector Dorego wrongly asserts that the minimum value of the Settlement is only $2 million because the Settlement provides for a $1 million guaranteed *cy pres* distribution.  Dorego Obj. 6-7.  In truth, as discussed herein, the guaranteed *cy pres* distribution does *not* reduce the value of the Settlement, and will not under any circumstances reduce the minimum amount of $3 million available to Class members which as stated supports the requested attorney's fees and expenses.  The guaranteed *cy pres* distribution would reduce the amount of funds available to the Class only to the extent that there are claims sufficient to exceed the amount of $9 million.  If anything, the guaranteed *cy pres* payment of $1 million will serve to *increase* the total amount paid by Defendants to the extent that claims exceed $2 million.  For example, if the amount of claims submitted totals $3.5 million, Defendants will be required to pay out $4.5 million: $3.5 million in claims and $1 million in guaranteed *cy pres* payments.  *See* SA III.B.1-3.

In addition, Class members in this case have also received an important benefit in the form of injunctive relief, which Objectors fail to assign any value. *See* Batman Obj. at 4; *see also Sullivan*, 667 F.3d at 329 (rejecting objection that "fails to acknowledge the injunctive relief offered by the settlement, however, which is intended to benefit all class members regardless of individual monetary recovery").  Indeed, the Court may award the requested attorneys' fees based solely on the value of the injunctive relief obtained for the benefit of the Class.

12

*See, e.g., Budeprion*, 2012 U.S. Dist. LEXIS 91176, at *56-57 (awarding $4.5

million in fees, expenses and incentive awards in connection with an injunctive-

relief only settlement in a consumer class action where defendants agreed to, *inter*

*alia*, make certain labeling changes).  Here, the injunctive relief, which requires

Defendants to remove the labeling claims at issue from Coppertone products, is

particularly valuable in the context of this action because the FDA is unlikely to

actively prosecute violations of its prohibiting such labels.[4]   As a result of this

Settlement, Class members will have a right to enforce the Court ordered

injunction, thus eliminating the need for them to rely on discretionary agency

enforcement.

     Objector Batman argues that the injunctive relief is "meaningless" because

Class Counsel is "taking credit" for something Merck was "already doing before it

signed the settlement."  Batman Obj. 4.  While it is true that Merck began

implementing labeling changes on June 22, 2012, prior to executing the Settlement

Agreement on September 21, 2012, such changes were made solely in connection

---

[4] *See* Amity Hartman, *FDA's Minimal Regulation of Cosmetics and the Daring Claims of Cosmetic Companies That Cause Consumers Economic Harm*, 36 W. St. U. L. Rev. 53, at *54 (2008) ("The current regulatory scheme does not always give consumers adequate economic protection.  This is not due to the Act itself, but is a result of the fact that the FDA does not enforce the law to the extent that their authority permits. They have the power to stop companies from making daring and misleading claims about their products that have no basis in fact, yet they rarely do.").

with and as a result of the global settlement of the California and New Jersey

actions, as negotiated by Class Counsel and agreed to in principle several months

before the instant Settlement Agreement was executed and filed in this Court.

These changes were the direct result of Class Counsel's efforts on behalf of

members of the Class.  *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 304 (W.D.

Tex. 2007) (value of non-monetary relief to the class was not diminished by its

implementation prior to the settlement agreement becoming effective).

Objectors argue that the labeling changes obtained through the Settlement do

not benefit Class members who were "previously misled" by Defendants'

misleading labeling.  Dorego Obj. 4.  Such an argument is in error because it

assumes, without any basis in fact, that all Class members know the truth about

Defendants' claims and could no longer be harmed by Defendants' misleading

labeling claims.  The fallacy of this assertion is patently obvious, as there is no

reason to believe, nor have Objectors provided a reason to believe, that every

absent Class member (*i.e.*, every prior purchaser of the sunscreen products at issue)

now understands the truth behind the misleading claims at issue.  In fact, the

FDA's recent actions and statements seem to indicate otherwise.  *See Labeling and*

*Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use*,

76 Fed. Reg. 35620, 35642 , 35643 (June 17, 2011) (referring to the new sunscreen

labeling requirements, "we have made changes to the labeling to more accurately

14

convey appropriate information to consumers about the benefits, directions, and limitations" of sunscreen products and stating that "[w]e have previously identified ["sunblock" "waterproof" and "sweatproof" claims] as ones that would render a product misbranded but are addressing them again in this document because OTC sunscreen products currently marketed without approved applications continue to contain the claims." ).

Equally untenable are Objector Batman's assertions that the injunctive relief obtained has no value because (i) it applies equally to all consumers, not just to Class members who are releasing claims; and (ii) "prospective injunctive relief is not compensation for past injuries for consumer fraud." Batman Obj. 4. However, the value of the injunctive relief to Class members is not diminished because it has wider applicability than the Class or is prospective. The cases cited by Objector Batman do not state otherwise.

In *Synfuel Techs. v. DHL Express (USA), Inc.* 463 F.3d 646, 654 (7th Cir. 2006) the court criticized coupon and other "in-kind" settlements that require class members to do "forced future business" with the defendant in place of providing cash to Class members. This case in inapposite because Class members are not being forced to do future business with Merck, and they are receiving back a substantial amount of the purchase price they paid, in cash, in addition to valuable injunctive relief.

15

In *McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012), the Third Circuit addressed  whether a class representative had standing to seek injunctive relief on behalf of a class where the class representative was no longer defendants' customer and was no longer at risk of future harm from the wrongful conduct.  *Id.* at 224.  *McNair* did not address whether obtaining injunctive relief as a negotiated settlement term provides value to the Settlement Class.  Indeed, the Third Circuit has recognized that such relief in the context of settlement ***does*** provide benefit and value to Class members.  *See Sullivan*, 667 F.3d at 329.

## IV.    The Named Plaintiffs Fairly and Adequately Protect All Class Members' Interests

Objector Batman wrongly argues that the Settlement violates Rule 23(a)(4)'s requirement that the class representatives "fairly and adequately protect" class members' interests because "class members who suffered injury from products purchased before July 31, 2006" will not be compensated.  Batman Obj. 4.  First, all members of the Class, including those who purchased before July 31, 2006, are benefiting from the value of the injunctive relief and the guaranteed *cy pres* awards.  *See Sullivan*, 667 F.3d at 328-29 (stating that injunctive relief provides benefit to class members and upholding settlement despite the fact that "millions of class members will receive no money" as argued by objector).

Second, the class representatives' interests are perfectly aligned with the rest of the Class, including Class members who purchased Coppertone products prior to July 31, 2006, because they also purchased products before that date.  *See* Declaration of Steven Brody ¶2; Declaration of Suzanne Grunstein ¶2; Declaration of Chaim Hirschfeld ¶2.   The Third Circuit has stated that, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012).

Furthermore, the Settlement must be viewed in light of potential defenses raised in litigation.  The monies that were made available to pay claims by Defendants were not limitless, but a product of the parties' negotiations which by definition, means that neither party obtains everything it seeks.  *In re Johnson & Johnson Derivative Litig.*, No. 10-2033 (FLW), 2012 U.S. Dist. LEXIS 153978, at *51 (D.N.J. Oct. 26, 2012) (in evaluating the fairness of a settlement, recognizing that a "settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation.").

The Settlement was reached after arduous and often contentious negotiations relating to each of the Settlement's key terms, including who is entitled to a

17

monetary recovery, and Defendants refused to pay monies for products purchased prior to the date they contend that claims raised in this action would be barred by applicable statutes of limitations. *See* N.J. Stat. §12A:2-725 (four-year statute of limitations applicable to breach of warranty claims); *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 328 (3d Cir. N.J. 2007); N.J. Stat. § 2A:14-1 (six-year statute of limitations applicable to CFA and unjust enrichment claims); *Mirra v. Holland America Line*, 751 A.2d 138, 140 (App. Div. 2000); *Jacobson v. Celgene Corp.*, No. 09-4329, 2010 U.S. Dist. LEXIS 36714, at *9 (D.N.J. Apr. 14, 2010).

Plaintiffs ultimately agreed to the July 31, 2006 cut-off date in conjunction with the many compromises the parties made in an effort to resolve this case pursuant to terms that as a whole were fair and reasonable to the Class in light of the risks associated with continuing litigation and the anticipated defenses that would be asserted.  The fact that Class members will receive varied relief does not preclude approval of the Settlement.  In fact, the Third Circuit has held that "varied relief among class members in a class settlement is not unusual." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010), *citing Petrovic V. Amoco Oil Corp.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members."); *see also Hall*, 2010 U.S. Dist. LEXIS 109355, at *39-40 (D. N.J. Oct. 13, 2010) ("In short, the Plan of Allocation (as well as the *cy pres* provision) are significant terms of a heavily

18

negotiated and well thought out Settlement Agreement … better left

undisturbed.").

There is simply nothing here that indicates that Plaintiffs' interests are not

aligned with those of pre-July 31, 2006 purchasers, or that Plaintiffs are otherwise

not adequate class representatives.  *Dewey*, 681 F.3d at 183.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court

overrule all objections, finally approve the Settlement as fair, reasonable and

adequate pursuant to Federal Rule of Civil Procedure 23 and issue related relief as

previously requested by the parties.

DATED:  February 13, 2013

> **KANTROWITZ, GOLDHAMER**
> **& GRAIFMAN, P.C.**
>
> /s/ *Gary S. Graifman*
> Gary S. Graifman, Esq.
> 210 Summit Avenue
> Montvale, NJ 07645
> Tel: (201) 391-7000
> Fax: (201) 307-1086
> *ggraifman@kgglaw.com*
> **Counsel for Plaintiffs**
>
> **ABRAHAM, FRUCHTER**
> **& TWERSKY, LLP**
> Mitchell M.Z. Twersky, Esq. (*pro hac vice*)
> Ximena R. Skovron, Esq. (*pro hac vice*)
> One Penn Plaza, Suite 2805

19

New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
*mtwersky@aftlaw.com*
*xskovron@aftlaw.com*
**Settlement Class Counsel**

Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*

**Counsel for Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY et al., on behalf of themselves and all others similarly situated, <br><br>       Plaintiffs, <br><br>          v. <br><br> MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, et al., <br><br>          Defendants. | Case No. 3:12-cv-04774-PGS-DEA <br><br> *DOCUMENT ELECTRONICALLY FILED* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused to be filed, via electronic filing, the

following documents with the United States District Court for the District of New

Jersey:

1.      PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO
        OBJECTIONS AND REQUEST FOR EXCLUSION;

2.      DECLARATION OF STEVEN BRODY;

3.      DECLARATION OF SUZANNE GRUNSTEIN; and

4.      DECLARATION OF CHAIM HIRSCHFELD.

I hereby certify that on this date, I caused copies of the foregoing documents to be

served via ECF and electronic mail:

Eric F. Gladbach
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
*egladbach@reedsmith.com*

Forrest S. Turkish, Esq.
LAW OFFICES OF FORREST S. TURKISH
595 Broadway
Bayonne, NJ 07002
*fsturkish@aol.com*

Samuel J. Myles, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, P.C.
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
*smyles@holstonlaw.com*

Robert E. Margulies, Esq.
MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street, Suite 1201
Jersey City, NJ 07311
*rem@mwhlawfirm.com*

I further certify that on this date, I served a copy of the foregoing documents on the following by first class postage prepaid U.S. Mail and by electronic mail:

> Jeffrey Weinstein
> WEINSTEIN LAW
> 518 East Tyler Street
> Athens, TX 75751
> *jeff@longhornlawyer.com*

I further hereby certify that I have provided courtesy copies of the foregoing documents by first class postage prepaid U.S. Mail to the Honorable Peter G. Sheridan, U.S.D.J., pursuant to Local Civil Rule 5.2 and Electronic Case Filing Policies and Procedures.

Dated:  February 13, 2013

ABRAHAM, FRUCHTER &
 TWERSKY, LLP

_____
Ximena R. Skovron
One Penn Plaza, Suite 2805
New York, NY 1011
Tel:  (212) 279-5050
Fax: (212) 279-3655
*xskovron@aftlaw.com*