Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*

**Counsel for Plaintiffs**

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>  vs.<br><br>MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, et al.,<br>                    Defendants. | Case No. 3:12-cv-04774-PGS-DEA<br><br>*DOCUMENT ELECTRONICALLY FILED*<br><br><br>MOTION DATE:  June 17, 2013 |

## PLAINTIFFS' NOTICE OF MOTION TO REQUIRE POSTING OF APPEAL BONDS BY OBJECTOR-APPELLANTS

PLEASE TAKE NOTICE THAT on June 17, 2013, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, Plaintiffs Steven Brody, Chaim Hirschfeld and Suzanne Grunstein ("Plaintiffs") shall move before the Honorable Peter G. Sheridan, U.S.D.J., at the United States District Court, Martin Luther King, Jr. Federal Courthouse, 50 Walnut Street, Newark, New Jersey, for an Order requiring objector-appellants Cindy Beck, Fatima Dorego and Christopher Batman to post appeal bonds totaling $260,500.  In support of their motion, Plaintiffs shall rely upon the accompanying motion and incorporated memorandum of law, the Declaration of Mitchell M.Z. Twersky in Support of Plaintiffs' Motion to Require Posting of Appeal Bonds by Objector-Appellants, the Affidavit of Jennifer M. Keough Regarding Additional Claims Administration Costs Resulting From Appeal, and all pleadings and documents filed in this action and related proceedings.

A proposed Order is attached hereto as Exhibit A.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 78.1(b), Plaintiffs request oral argument of this motion.

DATED:  May16, 2013

**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**

/s/ *Gary S. Graifman*
Gary S. Graifman, Esq.

2

210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*
**Counsel for Plaintiffs**

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
Mitchell M.Z. Twersky, Esq. (*pro hac vice*)
Ximena R. Skovron, Esq. (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
*mtwersky@aftlaw.com*
*xskovron@aftlaw.com*
**Settlement Class Counsel**

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY et al., on behalf of themselves and all others similarly situated, | Case No. 3:12-cv-04774-PGS-DEA |
| Plaintiff, | *DOCUMENT ELECTRONICALLY FILED* |
| vs. | |
| MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, et al., | MOTION DATE:  June 17, 2013 |
| Defendants. | |

## [PROPOSED] ORDER REQUIRING THE POSTING OF APPEAL BONDS BY OBJECTOR-APPELLANTS

Plaintiffs' Motion to Require Posting of Appeal Bonds by Objector-Appellants filed on _____, having been brought before the Court; and

The Court having considered the papers submitted by Plaintiffs, and having heard oral presentations by Plaintiffs and the Objectors,

**ORDERED AND DECREED** that Objectors-Appellants shall post appeal bonds of $_____ each, within _____ days of the date of this Order.

DATED:  May__, 2013

_____
HON. PETER G. SHERIDAN, U.S.D.J.

1

Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*

*Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MERCK & CO., INC., f/k/a SCHERING-PLOUGH CORPORATION, et al.,<br>Defendants. | Case No. 3:12-cv-04774-PGS-DEA<br><br>*DOCUMENT ELECTRONICALLY FILED*<br><br>MOTION DATE: June 17, 2013 |

## PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL BONDS BY OBJECTOR-APPELLANTS AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................6

A.    FRAP 7 Empowers this Court to Impose an Appeal Bond on
Objector-Appellants..........................................................................6

B.    A Bond, Including the Amount, is Within the Court's Discretion................12

C.    A Bond of $260,500 is Necessary to Cover the Costs of
the Appeal ......................................................................................14

     1.    The Costs of Briefing the Appeals Are Estimated
to be at Least $12,500.........................................................14

     2.    Costs Associated With Settlement Administration
Are Estimated to be $48,000.............................................16

     3.    Attorneys' Fees Are Estimated to be $200,000 .................18

CONCLUSION .................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Adsani v. Miller*,
    139 F.3d 67 (2d Cir.1998) ...............................................................12, 18, 20

*Allapattah Servs. v. Exxon Corp.*,
    No. 91-0986-CIV, 2006 U.S. Dist. LEXIS 88829
    (S.D. Fla. Apr. 7, 2006) ...............................................................7, 12, 13, 14

*Barnes v. FleetBoston Financial Corp. et al.*,
    No. 01-10395-NG (D. Mass. 2006).................................................................7

*Blessing v. Sirius XM Radio Inc.*,
    No. 11-3696, 2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012) ..........10

*Cassese v. Williams*,
    No. 11-4333, 2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012)..........10

*Chin v. Chrysler LLC*,
    538 F.3d 272 (3d Cir. 2008) ........................................................................19

*Cohen v. Beneficial Loan Corp.*,
    337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949) ..................................18

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) .........................................................................................11

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)................................................................... 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ..........................................................................2

*Hirschensohn v. Lawyers Title Ins. Corp.*,
    No. 96-7312, 1997 U.S. App. LEXIS 13793 (3d Cir. 1997).................14, 19

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
    695 F. Supp. 2d 157 (E.D. Pa. 2010)............................................................13

*In re Cardizem CD Antitrust Litig.*,
　　391 F.3d 812 (6th Cir. 2004) ........................................................6, 13, 18, 20

*In re Checking Account Overdraft Litig.*,
　　No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384
　　(S.D. Fla. Feb. 14, 2012). .......................................................................*passim*

*In re Diet Drugs Products Liab. Litig.*,
　　MDL No. 1203, 2000 U.S. Dist. LEXIS 16085 (E.D. Pa. Nov. 6, 2000) .....15

*In re Initial Pub. Offering Sec. Litig.*,
　　721 F. Supp. 2d 210 (S.D.N.Y. 2010) ...........................................................10

*In re MagSafeApple Power Adapter Litig.*,
　　No. C 09-01911 JW, 2012 U.S. Dist. LEXIS 88549
　　(N.D. Cal. May 29, 2012) ...............................................................................11

*In re Nutella Mktg. & Sales Practices*,
　　No. 11-1086 (FLW), 2012 U.S. Dist. LEXIS 172006
　　(D. N.J. Nov. 20, 2012) ....................................................................12, 13, 16

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
　　520 F. Supp. 2d 274 (D. Mass. 2007)...............................................................7

*In re Tricor Indirect Purchaser Antitrust Litig.*,
　　No. 05-360-SLR, 2009 U.S. Dist. LEXIS 101362
　　(D. Del. Oct. 28, 2009) ...................................................................................10

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
　　No. 2:06-CV-00225-PMP-PAL, 2010 U.S. Dist. LEXIS 21466
　　(D. Nev. Mar. 8, 2010) .....................................................................................7

*Larson v. AT & T Mobility LLC*,
　　687 F.3d 109 (3d Cir. 2012).............................................................................17

*McCoy v. Health Net, Inc.*,
　　569 F. Supp. 2d 448 (D.N.J. 2008)..................................................................10

*O'Keefe v. Mercedes-Benz USA, LLC*,
    No. 01-CV-2902, 2003 U.S. Dist. LEXIS 9838
    (E.D. Pa. 2003) ............................................................... 19

*Park v. Thomson Corp.*,
    633 F. Supp. 2d 8 (S.D.N.Y. 2009) ............................................ 10

*Rhodenbaugh v. CVS Pharmacy, Inc.*,
    372 S.W.3d 922 (Mo. Ct. App. 2012) ........................................ 10

*Sampang v. AT&T Mobility LLC*,
    No. 07-cv-5325-JLL (D.N.J.), Docket No. 461 ........................... 17

*Sckolnick v. Harlow*,
    820 F.2d 13 (1st Cir. 1987)....................................................... 13

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011........................................................ 10

*Venen v. Sweet*,
    758 F.2d 117 (3d Cir. 1985) ........................................................ 6

**Statutes and Rules**

3d Cir. L.A.R. 27.4 ...................................................................... 15

3d Cir. L.A.R. 39.3(a) ................................................................. 15

3d Cir. L.A.R. 39.3(c)(2) ............................................................. 15

Fed. R. App. P. 7 ....................................................................*passim*

Fed. R. App. P. 38...................................................................... 13

Fed. R. App. P. 39(c) .................................................................. 15

Fed. R. Civ. P. 23 ......................................................................... 2

New Jersey Rule of Court 4:42-9(a)(2) ................................. 19, 20

Pursuant to Rule 7 of the Federal Rules of Appellate Procedure ("FRAP"), Plaintiffs respectfully move this Court for entry of an order requiring the posting of appeal bonds by objectors Cindy Beck, Fatima Dorego and Christopher Batman (collectively, the "Objectors" or "Objector-Appellants").  As shown below, the objections are without merit and subject the Objectors to the payment of costs. Thus, appeal bonds should be imposed on each of the Objector-Appellants as a prerequisite for pursuing their appeals.[1]

## INTRODUCTION

On January 17, 2013, after nine years of hard fought litigation, the parties filed their Joint Motion for Final Approval of Class Action Settlement and Issuance of Related Orders (Docket No. 21) ("Joint Motion") seeking final approval of the Settlement with Merck & Co. ("Merck" or "Defendants") which provided, *inter alia*, a cash fund for the benefit of Plaintiffs and Settlement Class Members, and immediate injunctive relief.  Only three objections to the Settlement were filed (Docket Nos. 25-27) (collectively, the "Objections"), raising issues related generally to the *cy pres* provision, the inadequacy of injunctive relief, and the amount of the attorneys' fees and expenses sought by Settlement Class Counsel.

---

[1] This motion incorporates the definitions of the terms used in the Settlement Agreement and the Final Order Approving Class Action Settlement (Docket No. 46) ("Final Approval Order").

1

The Court carefully reviewed all of the filings related to the Settlement, including the Joint Motion, the Objections, and responses to the Objections.  On February 20, 2013, the Court held a Final Approval Hearing at which all the parties and Objectors were given the opportunity to appear and address the Court.  The Final Approval Hearing was continued, and a subsequent telephonic conference was held by the Court on March 12, 2013, where the parties and Objectors had an additional opportunity to present argument to the Court (the "Telephonic Hearing").

After full consideration of the filings and the presentations at the Final Approval Hearing and Telephonic Hearing, the Court concluded that the Settlement provides a substantial recovery for the Settlement Class Members, and represents an excellent result for the Settlement Class under all of the circumstances and challenges presented by this case and in the Merck Actions. The evidence presented to the Court, including the nine years of active litigation of the claims in the Merck Actions as well as an appeal, overwhelmingly supports the Court's conclusion that the Settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23 and *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

The Court denied the Objections and rejected the arguments set forth therein in all respects.  At the conclusion of the Telephonic Hearing, based on its findings and conclusions, the Court announced its intention to grant final approval of the

Settlement.  On March 12, 2013, the Court entered its Final Approval Order.  On the same date, the Court entered a Final Judgment dismissing the action with prejudice as provided in the Order.

The Order and Final Judgment should have put an end to this litigation, allowing the parties to expeditiously distribute the benefits of the Settlement to Settlement Class Members.  The delivery of those benefits to Class Members, however, has now been unnecessarily delayed by the Objector-Appellants, who are asserting meritless objections.  The Objector-Appellants are all professional objectors represented by lawyers with motivations having little to do with this litigation.  *See* Plaintiffs' Supplemental Brief in Response to Objections and Request for Exclusion (Docket No. 35) at 1-3.  Indeed, one district court recently criticized Objector-Appellant Fatima Dorego for filing a meritless objection in that case, thereby delaying the disbursement of settlement funds at the expense of the class:

> [P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. **Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing**. . . . (Emphasis added).

*In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384, at *45-46 (S.D. Fla. Feb. 14, 2012).

3

Ultimately, the court in *Checking Account Overdraft Litigation* required Dorego to post an appeal bond totaling $616,338.00. *Id.* at Docket No. 2473 (Order Mandating Appeal Bond dated February 14, 2012) (slip op.). Dorego shortly thereafter withdrew her frivolous appeal challenging the approval of that settlement. *Id.* at Docket No. 121.

Here, there is an overwhelming likelihood that the Order will be affirmed on appeal as the Objections were without merit. The Objector-Appellants' principal argument was that the maximum Settlement Fund would be depleted by the guaranteed $1 million *cy pres* distributions in the event, and only in the event, that claims totaled more than $9 million. This argument, however, lacked any factual basis for two reasons: 1) the claims submitted to the Claims and Settlement Administrator did not exceed $9 million in value, as was discussed at the Final Approval Hearing and the Telephonic Hearing, and 2) Defendants agreed to pay additional monies into the Settlement Fund in the event that the claims timely submitted to the Claims and Settlement Administrator exceeded $9 million. *See* Final Approval Hearing Tr. 42. Objector-Appellants also conveniently overlooked that the Settlement Fund provided to Claimants the ***full measure*** of damages available to Class members under the causes of action asserted here.

The Objector-Appellants' other primary argument was equally without merit. Contrary to the overwhelming evidence presented to the Court, they

claimed that the *cy pres* fund recipients, which are non-profit legal services, were inappropriate as their activities did not benefit Class members.  Numerous courts, however, have approved similar distributions in similar class actions and affidavits from each recipient demonstrated that, in fact, each engaged in advocacy that directly and significantly benefitted consumers, including Class members, in ways that related to the causes of action raised in this case.  Given that the standard that applies to the appellate review of approved class action settlements is an abuse of discretion standard, and given, as stated above, the lack of factual support for the arguments raised by the Objector-Appellants in this Court, the Objector-Appellants' arguments are without merit, essentially frivolous, and it is extremely likely they will be rejected by the Third Circuit Court of Appeal.  Accordingly, this Court should require each of the Objector-Appellants to post appeal bonds in line with FRAP 7.

Rule 7 of the Federal Rules of Appellate Procedure authorizes a Court to set the appeals bond in an "amount necessary to ensure payment of costs on appeal." FRAP 7.  Such costs have been interpreted by courts in and out of this Circuit as taxable costs as well as the indirect costs resulting from the appeal.  Here, the costs that will be incurred as a result of the pending appeals are the increased settlement administration costs and expenses that will be incurred as well as the attorneys' fees that will be incurred by Settlement Class Counsel in defending the appeals.

These costs will be highly detrimental to the Class, significantly delaying the disbursement of the Settlement Fund and further depleting the benefits available to pay Class members.  Accordingly, and for the reasons set forth below, Plaintiffs urge the Court to order Objector-Appellants to each post appeal bonds of $86,833, totaling $260,500.  These bonds are necessary to ensure that the $12,500 in projected taxable costs, $48,000 in projected settlement administration costs, and $200,000 in potential attorneys' fees are paid if Objectors lose their appeals.  The amount of these bonds is appropriate in this case and is reasonable in light of the meritless and attorney-driven nature of the Objector-Appellants' appeals.

## ARGUMENT

### A.   FRAP 7 Empowers this Court to Impose an Appeal Bond on Objector-Appellants

Rule 7 of the Federal Rules of Appellate Procedure empowers district courts to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  FRAP 7.  This Court retains jurisdiction "during the pendency of an appeal" to order Rule 7 bonds. *Venen v. Sweet*, 758 F.2d 117, 120-21, n.2 (3d Cir. 1985).

Courts have recognized that appeals by objectors have "the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds."  *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004).  Such appeals, which frequently lack merit, result in a

significant expense to the plaintiffs.  *See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 U.S. Dist. LEXIS 21466, at *18 (D. Nev. Mar. 8, 2010) ("The Court further finds that the four Objectors should be required to file an appeal bond sufficient to secure and ensure payment of costs on appeals which in the judgment of this Court are without merit and will almost certainly be rejected by the Ninth Circuit Court of Appeal."); *Allapattah Servs. v. Exxon Corp.*, No. 91-0986-CIV, 2006 U.S. Dist. LEXIS 88829, at *5 (S.D. Fla. Apr. 7, 2006) ("The inconsistency of [the objector's] arguments renders them irretrievably flawed and reveals that the Objections [ . . . ] are both frivolous and unhelpful to the resolutions of the issues in this case.").

As one court aptly stated, "[t]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."  *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007).  Thus*,* "[t]he burden of litigating frivolous appeals should shift to the objectors instead of to the class." *Barnes v. FleetBoston Financial Corp. et al.*, No. 01-10395-NG, slip op. at 3 (D. Mass. 2006) (attached as Exhibit A).

Here, it is clear that the appeals are without merit and will very likely be rejected by the Third Circuit.  These Objections have been filed by professional

objectors who have objected to numerous class action settlements in recent years, including Objector-Appellant Dorego, who has already been criticized by the U.S. District Court for the Southern District of Florida for such tactics. *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, at \*45-46. The Objections filed by Objector-Appellants were the only Objections to the Settlement, despite a Class that is comprised of tens of thousands of individuals. Moreover, the issues in dispute in this litigation were aggressively litigated over the course of nine years by the parties, through numerous dispositive motions and several levels of appeals in the California state courts.

In their Objections, Objector-Appellants did not take issue with the reasonableness of the Settlement other than to argue—erroneously—that the guaranteed $1 million *cy pres* distributions were unreasonable because they would deplete the Settlement Fund of the maximum $10 million available to pay out if more than $9 million worth of claims were submitted to the Claims and Settlement Administrator, which did not happen, as the Court was aware when it approved the Settlement. Yet, Defendants had agreed to contribute additional monies to insure, if necessary, that a maximum Settlement Fund of $10 million was available to pay claimants. Final Approval Hearing Tr. 42. Thus, the guaranteed *cy pres* distributions provided for in the Settlement had no impact on the amount (*i.e.*, $10 million) of the Settlement Fund available to pay Claimants. As to Objectors' other

8

primary argument that the recipients of the *cy pres* were inappropriate, that

argument was contrary to the numerous courts permitting similar distributions and

also in error as a factual matter as the affidavits submitted by Plaintiffs established.

In addition, given that approval of a settlement is reviewed based on an abuse of

discretion standard, and given, as stated, the lack of factual support for the

arguments raised by the Objector-Appellants in this Court, Objectors are highly

unlikely to prevail on appeal.

Defending an appeal, even one without merit, is both time-consuming and

expensive.  Indeed, the pendency of this appeal will obligate Plaintiffs and

Defendants to spend considerable additional time and money.  Most importantly,

distribution of the settlement proceeds to and for the benefit of Class members will

be delayed for months, if not years, by the appeals process, and will result in the

Claims and Settlement Administrator incurring substantial additional monthly

expenses.  Consequently, it is appropriate to require each of the Objector-

Appellants to post an appeal bond to ensure payment of the projected costs of the

appeals.

The reasonableness of Plaintiffs' request is further underscored by the fact

that the Objector-Appellants are all serial "professional" objectors and are

dispersed throughout the United States, making the risk of non-payment

significant.[2]  Because Appellants are dispersed around the country, Class Counsel

would be required to institute numerous collection actions to recover the costs

---

[2] Objector Beck resides in Athens, Texas (Beck Decl. Docket No. 25 ¶4). Beck's attorneys, Robert E. Margulies and Jeffrey Weinstein, have filed objections in the following cases, including two in this Circuit raising arguments strikingly similar to those raised here, but which were overruled: *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 284, 328 (3d Cir. 2011); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) (Weinstein and Margulies representing objector Christine Weinstein, Weinstein's wife); *Park v. Thomson Corp.*, 633 F. Supp. 2d 8 (S.D.N.Y. 2009) (Weinstein representing objector Bonner Walsh, his law partner); and *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210 (S.D.N.Y. 2010).

Notably, in addition to *McCoy*, Weinstein also represented his wife in 2008 objecting to the settlement in complex actions presided over by a California state court judge, *In re Ford Explorer Cases*, Sacramento Superior Court No. JCCP 4266 & 4270.  An attorney acting as class counsel is subject to disqualification for even the appearance of an improper conflict because of a close relationship with a putative representative.  *See Hale v. Citibank, N.A.*, 198 F.R.D. 606, 607 (S.D.N.Y. 2001) (denying class certification because potential conflict of interest between the named plaintiff's duties to the prospective class and her attorney-husband's contingent financial interest in the fees, if any, obtained by the law firm proposed to represent the class); *see also Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir. 1976) (disqualifying counsel due to appearance of impropriety by close relationship with class representative).

Objector Batman resides in Corpus Christi, Texas (Batman Decl. Docket No. 26-1 at 1) and has filed objections in the following actions: *Cassese v. Williams*, No. 11-4333, 2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012); *Blessing v. Sirius XM Radio Inc.*, No. 11-3696, 2012 U.S. App. LEXIS 25987 (2d Cir. Dec. 20, 2012); *In re Tricor Indirect Purchaser Antitrust Litig.*, No. 05-360-SLR, 2009 U.S. Dist. LEXIS 101362 (D. Del. Oct. 28, 2009); and *Rhodenbaugh v. CVS Pharmacy, Inc.*, 372 S.W.3d 922 (Mo. Ct. App. 2012).

Objector Fatima Dorego resides in San Diego, California (Dorego Decl. Docket No. 27 ¶2) and has filed objections in previous cases.  *See, e.g., In re Checking Account Overdraft Litig.*, MDL No. 2036, 2012 U.S. Dist. LEXIS 18384, at *38, *47 (S.D. Fla. Feb. 14, 2012).

incurred during appeal.  Accordingly, there is an increased risk of non-payment.
*See In re MagSafeApple Power Adapter Litig*., No. C 09-01911 JW, 2012 U.S.
Dist. LEXIS 88549, at *2 (N.D. Cal. May 29, 2012) ("because Objectors are
highly unlikely to prevail in their appeals, and because there is a significant risk of
non-payment following appeal [where the objectors were outside the jurisdiction
of the court of appeals], the Court finds that a bond is warranted.").

   In light of this Court's thorough consideration of the Objections and their
lack of any factual support under the circumstances presented, and the
deferential abuse of discretion standard governing these appeals, it is clear that
the Objector-Appellants are engaged in an unabashed attempt to disrupt the
Settlement, and "to simply extract a fee by lodging generic, unhelpful protests."
*Devlin v. Scardelletti*, 536 U.S. 1, 23, n.5 (2002) (Scalia, J., dissenting).  By
pursuing their appeals, the Objector-Appellants, through their "professional
objector" counsel, seek to hold hostage the significant settlement proceeds to be
distributed to and for the benefit of the Settlement Class.  Accordingly, it is
appropriate for the Court to impose an appeal bond.  *In re Checking Account
Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, at *45 (Objections by, among
others, Objector-Appellant Dorego, amount to a "tax that has no benefit to
anyone other than to the objectors" and serves to "tie up the execution of a

Settlement and further delay payment to the members of the Settlement Class . . .

.").

## B.    A Bond, Including the Amount, is Within the Court's Discretion

Both the form and the amount of the appeals bond is wholly within the

district court's discretion.  "'[A] district court, familiar with the contours of the

case appealed, has the discretion to impose a bond which reflects its determination

of the likely outcome of the appeal.'"  *In re Nutella Mktg. & Sales Practices*, No.

11-1086 (FLW), 2012 U.S. Dist. LEXIS 172006, at *3 (D. N.J. Nov. 20, 2012)

(quoting *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998)).  Although FRAP 7 does

not define what constitutes "costs on appeal" for purposes of determining the bond

amount, courts have interpreted the term broadly to include taxable costs allowable

under FRAP 39, as well as settlement administration costs, damages, interest, and

attorneys' fees.  *See Allapattah Servs.*, 2006 U.S. Dist. LEXIS 88829, at *60

("Pursuant to Rule 7, the Court will require [objector] to post an appeal bond in an

amount sufficient to cover the damages, costs and interest that the entire class will

lose as a result of the appeal."); *Adsani*, 139 F.3d at 74 ("Inclusion of attorney's

fees in a Rule 7 bond does not offend Rule 39 any more than inclusion of any other

costs does.").

District courts have routinely required objector-appellants to post appeal

bonds "as a condition of maintaining objector appeals of class action settlements or

attorneys' fee awards." *Cardizem*, 391 F.3d at 814 (affirming imposition of $174,429 appeal bond in connection with an appeal of a nationwide class action settlement).  *See also In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384, at *45-46 ($616,338 bond imposed on Objector-Appellant Fatima Dorego pursuant to FRAP 7); *Nutella*, 2012 U.S. Dist. LEXIS 172006, at *7; *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 164-67 (E.D. Pa. 2010).

In *Allapattah Servs.*, 2006 U.S. Dist. LEXIS 88829, at *60, for instance, the court imposed an appeals bond of $13,500,000 on an objector, concluding that the impact of the appeal would be "highly detrimental" on the entire Class as it would stay "both the entry of final judgment on all claims and payment to all Class members." *Id.* at *60-61.  FRAP 7 bonds may also be ordered to secure amounts necessary to pay an award for sanctions imposed against the objector for the filing of a frivolous appeal.  *See* FRAP 38 (permitting an award of "just damages, and single or double costs to the appellee" for frivolous appeals); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (*per curiam*).

### C.     A Bond of $260,500 is Necessary to Cover the Costs of the Appeal

The costs resulting from this appeal are projected to be $260,500, and consist of the estimated costs associated with printing the briefs and appendix, the increased costs of administration of the Settlement caused by the delay in disbursement of the settlement fund to the Class, any award of sanctions against Objector-Appellants and attorneys' fees incurred by Settlement Class Counsel in defending the appeals. *See, e.g., Allapattah Serv.*, 2006 U.S. Dist. LEXIS 88829, at *60.

### 1.     The Costs of Briefing the Appeals Are Estimated to be at Least $12,500

One category of appeal costs that may be included in a bond ordered pursuant to FRAP 7 "are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39." *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, at *3 (3d Cir. 1997). Such costs include "printing and producing copies of briefs, appendices, records, court reporter transcripts, premiums or costs for supersedes bonds, or other bonds to secure rights pending appeal, and fees for filing the notice of appeal." *Id.* In the present case, Plaintiffs (and Defendants) are certain to incur hundreds, if not thousands, of dollars in costs associated with filing briefs to be prepared in

14

multiple copies by a professional appellate printer.  *See* Fed. R. App. P. 39(c)
(taxation of reproduction costs).

   As one court in this Circuit has observed, estimating the costs in a multi-
objector appeal such as this one is difficult because "some of the objectors will
utilize parts of the record and reproduce exhibits that others will not" and some
objectors "will likely raise different issues in their appeals than others, causing the
class to incur either more or less expense than incurred defending the appeals of
other objectors."  *In re Diet Drugs Products Liab. Litig*., MDL No. 1203, 2000
U.S. Dist. LEXIS 16085 (E.D. Pa. Nov. 6, 2000) (imposing an appeals bond of
$25,000 based on estimate of taxable costs).

   In this action, taxable costs are projected to be approximately $12,500,
which accounts for the preparation of 15 copies of Plaintiffs' brief in opposition to
each of the three appeals[3] and the substantial appendix materials from the Merck

---

[3] 3d Cir. L.A.R. 39.3(a) provides costs may be taxed on 10 copies of the
brief to the Court, two copies to the prevailing party and one copy to each of the
three sets of objectors, which amounts to 15 copies of the brief in opposition in
each appeal, for a total of 45 copies.  Plaintiffs estimate that the brief with all
tables and certifications would be approximately 65 pages.  3d Cir. L.A.R.
39.3(c)(2) also provides the rate for copying at $0.10 per page, $4.00 for binding
each copy and $40.00 for each cover plus applicable sales tax.  At these rates,
production of Plaintiffs' briefs in opposition would cost $2,454.30 for the three
appeals.  Even if Plaintiffs were to submit an omnibus brief, which would lower
costs, this cost estimate does not include the cost of printing briefs for any motion
practice for summary action under 3d Cir. L.A.R. 27.4 and any petitions for
rehearing.

Actions that Objector-Appellants are unlikely to include, but will likely be

necessary, in view of the fact that the bulk of relevant litigation documents and

evidence were filed in those actions.  Including those materials in an appendix

will likely cost in the range of $10,000, an estimate that is based on the printing

costs – $9,787.20 – for the nine-volume Appellant's Appendix filed in the appeal

of the Gaston action.  *See* Declaration of Mitchell M.Z. Twersky in Support of

Plaintiffs' Motion to Require Objectors to Post Appeal Bonds, filed concurrently

herewith ("Twersky Decl."), at ¶6.

### 2. Costs Associated With Settlement Administration Are Estimated to be $48,000

Costs secured by a Rule 7 appeal bond may also include the costs attendant

to the delay associated with an appeal; here, the ongoing costs of administration

and delay in disbursement of Settlement funds while the Objector-Appellants' appeals

are pending.  *Nutella*, 2012 U.S. Dist. LEXIS 172006, at *6 (concluding that

"administrative costs" associated with the continued administration of the

settlement fund pending appeal "can be secured by a Rule 7 bond"); *Cardizem*, 391

F.3d at 818 (imposing a Rule 7 bond in a class action appeal based in part on the

costs associated with the "delay[ed] disbursement of settlement funds").

As set forth by the Claims and Settlement Administrator in the Affidavit of

Jennifer M. Keough Regarding Additional Claims Administration Costs Resulting

From Appeal filed concurrently herewith ("Keough Affidavit"), it is estimated that

$48,000 in administrative expenses will be incurred solely from the delay caused by the Objector-Appellants' appeals, and would include, among other expenses, additional costs necessary to extend website maintenance and to process and respond to written and verbal inquiries about the status of claims processing during the appeal.  Keough Affidavit ¶4.

Plaintiffs estimate the appeal could take up to 24 months to resolve based on the length of time from the filing of the notice of appeal to the final disposition in two recent class action cases where objectors appealed to the Third Circuit.  In *Dewey v. Volkswagen Aktiengesellschaft*, decided May 31, 2012, *see* 681 F.3d 170 (3d Cir. 2012), the objectors filed their notices of appeal 21 months prior to the disposition of the appeal by the Third Circuit, on August 20, 2010.  *See Dewey*, No. 07-cv-2249-FSH-PS (D.N.J.), ECF No. 268.  And in *Larson v. AT & T Mobility LLC*, decided June 29, 2012, *see* 687 F.3d 109 (3d Cir. 2012), the objectors filed their notices of appeal more than 19 months prior to the disposition of the appeal by the Third Circuit, on February 12, 2010.[4]  *See Sampang v. AT&T Mobility LLC*, No. 07-cv-5325-JLL (D.N.J.), Docket No. 461.  Here, the Claims and Settlement Administrator estimates the cost of a 24-

---

[4] The time attributed to the disposition of the *Dewey* and *Larson* appeals did not include the time necessary to resolve a petition for certiorari review, which may be filed by the Objectors in this case.

month delay in increased settlement administration costs at approximately $48,000.
*See* Keough Affidavit ¶4.

**3.     Attorneys' Fees Are Estimated to be $200,000**

Courts around the country have interpreted the "costs on appeal" for which
FRAP 7 seeks to ensure payment to include attorneys' fees incurred by appellants'
counsel in defending appeals.  *E.g., Cardizem*, 391 F.3d at 814; *Adsani*, 139 F.3d
at 74, 77 (interpreting the inclusion of attorney's fees in a Rule 7 bond to be
permissible under Rule 39) (citing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541,
551-52, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949) ("Once established, the right to
appeal, however, may be limited by statute requiring, for instance, the posting of
security for "expenses, including counsel fees, which may be incurred" on appeal
without offending principles of Equal Protection or Due Process fairness.")).

In *Cardizem*, for instance, the Sixth Circuit affirmed the imposition of a
$174,429 appeal bond by the district court in connection with an appeal of a
nationwide class action settlement.  The bond amount was based upon the
plaintiffs' estimate of taxable costs, administrative expenses connected to the
settlement caused by the resulting delay in judgment and projected attorneys' fees
to be incurred in defending the appeals.  *Id.*

In the Third Circuit, where the statute underlying the plaintiff's cause of
action defines "costs" to include attorneys' fees, attorneys' fees potentially may be

deemed "costs on appeal" for purposes of FRAP 7. *See Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, at *7 (3d Cir. June 30, 1997); *O'Keefe v. Mercedes-Benz USA, LLC*, No. 01-CV-2902, 2003 U.S. Dist. LEXIS 9838, at *10-11 (E.D. Pa. 2003) (noting that *Hirschensohn* "looked to whether the statute underlying the plaintiff's cause of action defined costs to include attorney's fees" in determining whether to include attorneys' fees in the FRAP 7 bond amount).

Here, in their complaint, Plaintiffs pled, among other causes of action, a cause of action for unjust enrichment and restitution. *See* Complaint (Docket No. 1) at 19-20. While unjust enrichment and restitution are common law, rather than statutory, causes of action, New Jersey Rule of Court 4:42-9(a)(2) would apply to a determination by this Court of whether attorneys' fees incurred on appeal should be awarded to Settlement Class Counsel. Rule 4:42-9(a)(2) defines attorneys' fees as part of the allowable taxable costs for funds created by counsel for the benefit of others, and provides that attorneys' fees "shall  be allowed ***in the taxed costs***" out of the "fund in court" at the court's discretion. N.J. R. Ct. 4:42-9(a)(2) (emphasis added). *See Chin v. Chrysler LLC*, 538 F.3d 272, 278-79 (3d Cir. 2008) ("when a state law claim is brought in federal court, that state's law should also be applied in determining whether to award attorneys' fees"). Thus, attorneys' fees incurred by Settlement Class Counsel in connection with the appeal, which may be awarded

19

pursuant to New Jersey Rule of Court 4:42-9(a)(2) out of the Settlement Fund, should be included as a "cost on appeal" for purposes of calculating the FRAP 7 bond amount. *Cardizem*, 391 F.3d at 815; *Adsani*, 139 F.3d at 77. Including attorneys' fees in the appeals bond amount is particularly appropriate here as the payment of such fees out of the Settlement Fund will injure the Class by depleting the funds available for the benefit of the Class.

As set forth in the Twersky Declaration, Class Counsel's fees incurred in defending the appeals are projected to be $200,000. Twersky Decl. ¶4. As noted above, the expected difficulty of collecting these monies from the Objector-Appellants in order to replenish the Settlement Fund provides sufficient justification to require them to post bonds including anticipated attorneys' fees.

Thus, $260,500 to be paid collectively by Objector-Appellants for an appeals bond, or $86,833 each, is a thoroughly reasonable estimate of the costs to be incurred during the pendency of the appeals and for which Plaintiffs are entitled to security under these circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court impose an appeal bond of $260,500 collectively on Objector-Appellants, as follows: $86,833 on Objector-Appellant Cindy Beck, $86,833 on Objector-Appellant Fatima Dorego, and $86,833 on Objector-Appellant Christopher Batman.

DATED:  May16, 2013

**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
*ggraifman@kgglaw.com*
***Counsel for Plaintiffs***

**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**
Mitchell M.Z. Twersky, Esq. (*pro hac vice*)
Ximena R. Skovron, Esq. (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
*mtwersky@aftlaw.com*
*xskovron@aftlaw.com*
***Settlement Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of May, 2013, I caused to be filed, via

electronic filing, the following documents with the United States District Court for

the District of New Jersey:

1.   PLAINTIFFS' NOTICE OF MOTION TO REQUIRE POSTING OF
     APPEAL BONDS BY OBJECTOR-APPELLANTS WITH
     [PROPOSED] ORDER REQUIRING THE POSTING OF APPEAL
     BONDS BY OBJECTOR-APPELLANTS AS EXHIBIT A;

2.   PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL
     BONDS BY OBJECTOR-APPELLANTS AND INCORPORATED
     MEMORANDUM OF LAW AS EXHIBIT A;

3.   DECLARATION OF MITCHELL M.Z. TWERSKY IN SUPPORT
     OF PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL
     BONDS BY OBJECTOR-APPELLANTS; and

4.   AFFIDAVIT OF JENNIFER M. KEOUGH REGARDING
     ADDITIONAL CLAIMS ADMINISTRATION COSTS
     RESULTING FROM APPEAL.

I hereby certify that on this date, I caused copies of the foregoing documents

to be served via ECF and electronic mail:

Eric F. Gladbach
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
*egladbach@reedsmith.com*

John P. Hooper, Esq.
REED SMITH, LLP
599 Lexington Avenue
22nd Floor
New York, New York 10022
*jhooper@reedsmith.com*

Forrest S. Turkish, Esq.
LAW OFFICES OF FORREST S. TURKISH
595 Broadway
Bayonne, NJ 07002
*fsturkish@aol.com*

Samuel J. Myles, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, P.C.
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
*smyles@holstonlaw.com*

Robert E. Margulies, Esq.
MARGULIES WIND, P.C.
Harborside Financial Center
Plaza 10
3 Second Street, Suite 1201
Jersey City, NJ 07311
*rem@mwhlawfirm.com*

I further certify that on this date, I served a copy of the foregoing documents

on the following by first class postage prepaid U.S. Mail and by electronic mail:

Jeffrey Weinstein
WEINSTEIN LAW
518 East Tyler Street
Athens, TX 75751
*jeff@longhornlawyer.com*

I further hereby certify that I have provided courtesy copies of the foregoing documents by Federal Express to the Honorable Peter G. Sheridan, U.S.D.J., pursuant to Local Civil Rule 5.2 and Electronic Case Filing Policies and Procedures.

Dated:  May 16, 2013

ABRAHAM, FRUCHTER &
  TWERSKY, LLP

Ximena R. Skovron
One Penn Plaza, Suite 2805
New York, NY 1011
Tel:  (212) 279-5050
Fax: (212) 279-3655
*xskovron@aftlaw.com*