IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN BRODY, CHAIM HIRSCHFELD and SUZANNE GRUNSTEIN, on behalf of themselves and all others similarly situated, Plaintiffs, vs. | Civil Action No. 12-cv-4774-PGS-DEA |
| Merck & Co., Inc., f/k/a Schering-Plough Corporation, MSD Consumer Care, Inc., f/k/a Schering-Plough Healthcare Products, Inc., Merck Sharp & Dohme Corp., as successor in interest to Schering Corporation, Scheringplough Healthcare Products Sales Corporation, and Schering-Plough Healthcare Products Advertising Corporation, Defendants. | |

**OBJECTOR CINDY BECK'S RESPONSE TO PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL BONDS**

Comes Now Objector Cindy Beck and objects to Plaintiffs' Motion to Require her to post an appeal bond, Doc. 56, and would show as follows:

**I.  Introduction**

Plaintiffs' and Class Counsel's request for an excessive bond – clearly intended to prevent any review of the class settlement wherein they obtained a mere $127,000 for class members while taking $2 million for themselves – lacks any basis in law or fact. Plaintiffs resort to misstating the key Third Circuit opinion on point.  And they bizarrely contend that Ms. Beck should be required to post a bond in this case because one of her attorneys, in a wholly separate case in which Ms. Beck was not involved, represented his own wife in a civil case!  Doc. 56 p. 10.  The Court should deny the motion in its entirety. If the Court does require a bond, it should not order a bond for more than $1,000.

## II. Neither attorneys' fees, costs associated with settlement administration, nor costs for a "frivolous appeal" may be included in the bond

Numerous cases in the Third Circuit dealing with a request for a bond from objectors to a class action settlement have rejected the very arguments made by Plaintiffs here. Most disturbingly, Plaintiffs reversed the very holding of the Third Circuit in the key case on point. Plaintiffs alleged:

> In the Third Circuit, where the statute underlying the plaintiff's cause of action defines "costs" to include attorneys' fees, attorneys' fees potentially may be deemed "costs on appeal" for purposes of FRAP 7. *See Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, at *7 (3d Cir. June 30, 1997).

Doc. 56 at 18-19. Yet, the Third Circuit held the exact opposite, that attorneys' fees may *never* be included in the appeal bond:

> Federal Rule of Appellate Procedure 7 provides that the District Court may require an appellant to file a bond or post other security in an amount necessary to "ensure payment of costs on appeal in a civil case." "Costs" referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39. …
>
> Rule 39, in turn, lists "costs" as including printing and producing copies of briefs, appendices, records, court reporter transcripts, premiums or costs for supersedeas bonds, or other bonds to secure rights pending appeal, and fees for filing the notice of appeal. These various items have their source in 28 U.S.C. § 1920. Attorneys' fees are not among the expenses that are described as costs for purposes of Rule 39. …
>
> In accordance with the holding and discussion in *McDonald,* therefore, **we conclude that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees.**

*Hirschensohn v. Lawyers Title Ins. Corp.*, 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997)(emphasis added); *see also, In re Am. President Lines, Inc.,* 779 F.2d 714, 716 (D.C.Cir.1985) ("The costs referred to [in Rule 7] are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39, and do not include attorneys' fees that may be assessed on appeal.").

District courts in the Third Circuit have rejected the inclusion of all three items in the bond – attorneys' fees, delay damages, and costs for a frivolous appeal. In *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 159 (E.D. Pa. 2010), the plaintiffs requested that the objector post a $569,618,666.70 bond. The court rejected the argument that attorney's fees and delay damages could be included in the bond. Next, the court rejected the argument that it may impose an additional amount for a frivolous appeal. Other district courts have made similar rulings. *In re Ins. Brokerage Antitrust Litig.*, MDL 1663, 2007 WL 1963063 (D.N.J. July 2, 2007); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.*, MDL NO. 1203, 2000 WL 1665134 (E.D. Pa. Nov. 6, 2000).

This Court too should deny the request to include in the bond any amounts for attorneys' fees, costs associated with settlement administration, or costs for a "frivolous appeal."

### A. The bond may not include attorney's fees

As indicated above, the bond may not include anticipated attorneys' fees. *Hirschensohn v. Lawyers Title Ins. Corp.*, 96-7312, 1997 WL 307777 (3d Cir. June 10, 1997)("Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees"). Other district courts in the Third Circuit have rejected requests to include attorneys' fees in the bond. *See*, *supra*. But even if fees were permitted if the underlying statute permitted the recovery of fees as costs, no underlying statute would permit the recovery of fees here. Plaintiffs claimed that an underlying New Jersey statute would permit the recovery of fees against the objectors:

> Rule 4:42-9(a)(2) defines attorneys' fees as part of the allowable taxable costs for funds created by counsel for the benefit of others, and provides that attorneys' fees "shall be allowed ***in the taxed costs***" out of the "fund

3

> in court" at the court's discretion. N.J. R. Ct. 4:42-9(a)(2) (emphasis added).

Doc. 56 at 19 (emphasis by Plaintiffs).  That section actually provides:

> (a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except …
>
> (2) *Out of a fund in court*. The court in its discretion may make an allowance **out of such a fund**, but **no allowance shall be made as to issues triable of right by a jury**.

N.J. R. Ct. 4:42-9(a)(2)(bold emphasis added).

For at least two reasons, Plaintiffs' claim is frivolous.  First, the statute only permits the award of fees "out of such fund."  By their own admission, Plaintiffs do not seek any award of fees out of a fund in court; they seek it from objectors.  By its express terms, the statute does not apply.  Second, the statute expressly prohibits the fee award "as to issues triable of right by a jury."  The causes of action asserted all raise issues "triable of right by a jury," so there is no right to a fee award.

District courts in the Third Circuit, including this one, have ruled on this issue have all held that the cost bond under Rule 7 may not include attorneys' fees when an objector appeals from the approval of a class action settlement.  *In re Ins. Brokerage Antitrust Litigation*, 2007 WL 1963063 (D. N.J. 2007);  *In re Diet Drugs*, 2000 WL 1665134 (E.D. Pa., Nov. 6, 2000).  Chief Judge Brown followed the *Hirschensohn* holding and held that attorneys' fees may not be included in the bond:

> While other circuits have decided to include attorneys' fees authorized by statute in Rule 7 bonds, these cases are not controlling here. The cases in this Circuit have not included attorneys' fees as "costs" under Rule 39, and, as such, this Court will not impose attorneys' fees as part of the appeal bond in this case.

*In re Ins. Brokerage Antitrust Litigation*, 2007 WL 1963063 at * 4 -5.  Similarly, this Court should not include any amount for attorneys' fees in the bond.

## B. The bond may not include delay damages like the alleged $48,000 of settlement expenses

The Third Circuit in *Hirschensohn* held that the costs that may be included in the bond are limited to "printing and producing copies of briefs, appendices, records, court reporter transcripts, premiums or costs for supersedeas bonds, or other bonds to secure rights pending appeal, and fees for filing the notice of appeal." Delay damages – the costs of administering the settlement during the appeal – are not included in that list.

Plaintiffs are seeking to impose a Rule 8 supersedeas bond on appellants, and are not permitted to do so. As the Fifth Circuit found, any delay damages to the class as a result of the appeal are not Rule 7 costs:

> The first reason given by the district court for requiring a bond in the amount of $150,000 is to provide security for the "detrimental impact of an appeal as to the entire class." To the extent the district court had in mind securing the benefits that would inure to the class members under the settlement agreement, the court was essentially using a bond for costs on appeal as a surrogate for a supersedeas bond.

*Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 298 (5th Cir. 2007). Rule 8 requires an appellant to post a bond for delay damages only if the appellant seeks to stay the judgment, and Beck does not seek any such stay. The settling parties agreed to a stay during an appeal, so Plaintiffs cannot now complain about that stay.

Finally, even if delay damages could be included in the bond, they cannot be included here because Plaintiffs have not shown that they will incur any such damages. The evidence Plaintiffs present is that *the settlement administrator* will incur $48,000 in expenses during the delay. Even if that were true, there is no showing that the alleged additional amounts will reduce in any way the claims payments to class members. Thus, Plaintiffs have failed to show that they will be damaged by the delay.

### C. The bond may not include any amount for a "frivolous appeal"

The Third Circuit in *Hirschensohn* held that the costs that may be included in the bond are limited to "printing and producing copies of briefs, appendices, records, court reporter transcripts, premiums or costs for supersedeas bonds, or other bonds to secure rights pending appeal, and fees for filing the notice of appeal." Nowhere did it allow additional amounts if the district court determines the appeal if "frivolous." As the court stated in the *Diet Drugs* case while rejecting the very argument Plaintiffs make here:

> Thus, even if these appeals are frivolous and solely an attempt to leverage an inventory settlement, Class Counsel has adequate remedies available to it in the court of appeals [other than a Rule 7 bond].

*In re Diet Drugs*, 2000 WL 1665134 at * 5. The Fifth Circuit similarly ruled:

> There is no provision in the rules of procedure for a district court to predict that an appellate court will find an appeal frivolous and to set a bond for costs on appeal based on an estimate of what "just damages" and costs the appellate court *might* award.

*Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 299 (5th Cir. 2007).

### III. Plaintiffs have failed to prove the alleged costs

Plaintiffs ask that the bond include $12,500 for "the costs of briefing." This amount is excessive. $9,787.20 of the estimated cost is to supplement the record with documents *that are not even part of the record*:

> In this action, taxable costs are projected to be approximately $12,500, which accounts for the preparation of 15 copies of Plaintiffs' brief in opposition to each of the three appeals and the substantial appendix materials from the Merck Actions that Objector-Appellants are unlikely to include, but will likely be necessary, in view of the fact tha*t the bulk of relevant litigation documents and evidence were filed in those actions*. Including those materials in an appendix will likely cost in the range of $10,000, an estimate that is based on the printing costs – $9,787.20 – for the nine-volume Appellant's Appendix filed in the appeal of the Gaston action.

Motion, Doc. 56 at 15-16 (emphasis added). *But the nine-volume Appellant's Appendix filed in the appeal of the Gaston action is not part of the record in this action.* Because those documents are not part of the record *in this case*, copy charges for those documents may not be included in the bond amount. Nor is there any showing that any of those documents, which dealt with the denial of class certification in a California state court, have any relevance to whether a *cy pres* award in this case was proper. There is no legal or factual basis for including those documents in the cost of the bond.

Thus, the only charge left for inclusion in a bond amount is the cost of copying briefs. Plaintiffs contend that "production of Plaintiffs' briefs in opposition would cost $2,454.30 for the three appeals." Motion, Doc. 56 at 15. But even that amount is excessive. It is based on the false assumption that they will need to produce 15 briefs in 3 separate appeals. As Plaintiffs know, the Court of Appeals will almost certainly consolidate the appeals and require Plaintiffs to file a single brief, as they have in many of class action settlement appeals. Thus, if the court orders a bond, it should be $1000 or less.

**IV. The appeal is not frivolous and there is no showing of bad faith**

Whether an appeal is frivolous is solely within the purview of the appellate court, not the district court. *Vaughn v. American Honda Motor Co., Inc.,* 507 F.3d 295, 299 (5th Cir. 2007). Nevertheless, while this Court may disagree with Objector's position on the *cy pres* component of the settlement, the argument is supported by numerous authorities and, therefore, cannot be deemed frivolous:

> 1. At least two circuits have held that a *cy pres* award is not permitted in a case, like this, where the *cy pres* funds can be distributed to class members. *Klier v.*

*Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011); *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

2. At least one member of the Third Circuit opposes *cy pres* payments to third parties. *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 359 (3d Cir. 2010)(Weis, concurring and dissenting)("I would hold that any funds remaining at the conclusion of the claims process should be distributed to class members where possible or should be escheated to the government.").

3. The American Law Institute *Principles of the Law: Aggregate Litigation* provides that the *cy pres* money should have been paid to class members. Am. Law Inst., *Principles of the Law: Aggregate Litigation,* § 3.07 (2010).

4. Even if *cy pres* were permissible, the award here does not satisfy the Ninth Circuit test that it (1) address the objectives of the underlying statutes, (2) target the plaintiff class, and (3) provide reasonable certainty that any member will be benefitted. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011).

Not only is the appeal not frivolous, but Plaintiffs have not alleged, much less proved, any bad faith or bad conduct by appellant Beck. Plaintiffs do not offer even a single piece of evidence or allegation that *Beck* is a "professional objector" or has ever engaged in "vexatious litigation" or done anything wrong in this or any other case. Indeed, there is no evidence that Beck has ever even objected to a class action settlement. Instead, Plaintiffs fling their *ad hominem* attacks at Beck's counsel, seeking to penalize her for her counsels' alleged misdeeds. Even worse, the Motion seeks to penalize Beck for the bizarre reason that unbeknownst to her she hired an attorney who in a previous

case in which Beck was not involved, the attorney represented his spouse. Even if that representation bore any relevance here, which it does not, counsel was *not* class counsel in that case, so there was nothing improper about representing his wife. Plaintiffs wholly fail to show why Beck should have to post a bond in this case for that alleged conduct.

**V.  The name-calling is unprofessional and not relevant**

In another class action case in this district where the undersigned represented an objector, the Plaintiffs similarly sought an appeal bond claiming that the appeal was frivolous. IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION, Dist. of New Jersey, MDL Docket 1850, Doc. 284. There Judge Hillman refused to require any bond. And despite the fact that the Plaintiffs there made the very same arguments about the appeal and the objector's counsel there, the Court of Appeals reversed the settlement approval. *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 359 (3d Cir. 2010).

As a member of the class, Objector has the right to object:

> Any class member may object to the proposal if it requires court approval under this subdivision (e) … .

FED. R. CIV. P. 23 (e)(5). And she has the right to appeal. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (recognizing a class member's standing to object to a settlement because "[t]he legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members.").

Objectors and their counsel play an important role in the class action process. There are four parties with a financial interest in a class action: the named Plaintiff, the Defendant, class counsel and the absent class members. Only three of those parties -- the named Plaintiff, the Defendant, and class counsel – participate in the settlement

negotiations. The absent class members, by definition, do not participate. The interests of the named Plaintiff are to increase his or her individual recovery through an incentive award that typically far exceeds the recovery of individual class members. The interests of class counsel are to maximize the fees to class counsel. The interests of the Defendant are to minimize the total amount paid out. Thus, all three participating parties' interests are maximized by a settlement that is for a lower total amount but that shifts more of the settlement funds to class counsel and the named Plaintiff and away from absent class members. Objectors are an important check on the process to ensure that the settlement does not benefit the named Plaintiff, the Defendant, and class counsel at the expense of the absent class members.

> Courts have recognized the vital role objectors play in the class action process:
>
> Judge Posner has noted that "the absence of a real client impairs the incentive of the lawyer for the class to press the suit to a successful conclusion. His earnings from the suit are determined by the legal fee he receives rather than the size of the judgment. No one has an economic stake in the size of the judgment except the defendant, who has an interest in minimizing it. The lawyer for the class will be tempted to offer to settle with the defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial."

*General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 953 -954 (Tex. 1996)(quoting Richard A. Posner, AN ECONOMIC ANALYSIS OF LAW 570 (4th ed. 1992)). Objectors, therefore play a critical role:

> While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion. Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away.
>
> Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and

> thereby improving the chances that a claim will be settled for its fair value. Intervenors have the potential to play this important role even in the numerous valid class actions where each plaintiff is seeking to be compensated only by a few dollars.

*Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003)(citations omitted). Similarly, the Third Circuit recognizes the importance of objectors:

> [A] lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries. The objecting lawyer independently can monitor the proposed settlement, costs, and fees for Class Counsel and, thus, aid the court in arriving at a fair and just settlement for the members of the class who individually are largely unrepresented. … [A]s the distinguished historian, Allan Nevins, wrote many years ago, from the conflict of ideas comes crystallization of thought. Objections serve a highly useful vehicle for the members of the class and the public generally; they require consideration by the court and its disposition of them usually provides reassurance that the settlement and the fees approved are fair and just.

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 278 F.3d 175, 202 (3d Cir. 2002) (J. Rosenn, concurring and dissenting). The majority in that case went out of its way to expressly agree with that discussion. *Id*. at 193 ("nothing we say is intended to detract from the important role of objectors' counsel that Judge Rosenn so eloquently notes in his concurring/dissenting opinion.").

Objector's counsel, Weinstein Law, has successfully protected class members from unfair settlements. For instance, in *Kingsborough v. Sprint Communications Co., L.P. et al.*, Civil Action No. 07-10651-LTS, District of Massachusetts, Doc. 79, Weinstein Law objected to a settlement that would have granted easements to the Defendants on class members' property without class member's express consent. The objection was the sole objection to the court's jurisdiction. After preliminarily approving the settlement before the objection, the court agreed with the objection to jurisdiction, rejected the settlement, and refused to permit the easements against class members.

*Kingsborough v. Sprint Communications Co., L.P.,* 673 F.Supp.2d 24, 28 (D. Mass. ,2009). Thus, Weinstein Law's objection saved thousands of landowners across the country from being subjected to involuntary easements on their property.

Indeed, the *Kingsborough* case illustrates the importance of objectors. The court noted that a similar class settlement had been approved without jurisdiction because there was no objector that raised the issue:

> The court is aware that another court has approved a similar settlement in another nationwide class action suit against a different telecommunications company. *See Hinshaw v. AT & T Corp*., 1998 WL 1799019 at *1 (Ind. Super. Aug. 24, 1998). The court understands that the AT & T settlement has a similar provision for recording easements by judgment of the court, as is proposed in this case. However, there is no indication that the court conducted an independent analysis of its jurisdiction. Nor did any person or entity object to the proposed settlement.

*Id*. at 35, n. 17. Thus, that case exemplifies the importance of objectors to the process and Weinstein Law's unique and important contribution.

In addition, Objectors can help the court simply identify an unfair settlement that needs to be disapproved. For instance, in *Edleson v. American Home Shield of Cal. Inc.,* Case No. 37-2007-00071725-CU-BT-CTL, in the San Diego Cal. Superior Court, Objector's counsel Weinstein Law objected to the unfair settlement as providing no real benefits to the class. After preliminarily approving the settlement before the objection, the court agreed with the objection and rejected the unfair settlement.

Objectors are particularly important in a case like this. According to Doc. 45, the class members will receive about $127,000 in claims, while Class Counsel will walk away with $2 million. That is *15 times* what the class members will receive. At the very least, appellate review is appropriate here. The Court should not prevent that with an excessive bond requirement.

Wherefore, Appellant Beck prays that the Court deny the Motion for an Appeal Bond.

/s/ Robert E. Margulies
ROBERT E. MARGULIES, ESQ.

MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street – Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

Jeffrey Weinstein
TX State Bar No. 21096450
WEINSTEIN LAW
518 East Tyler Street
Athens, TX   75751
903/677-5333
903/677-3657 – facsimile
*Pro Hac Vice*

ATTORNEYS FOR OBJECTOR

**Certificate of Service**

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by electric mail by the Clerk of the Court via the CM/ECF system on May 28, 2013.

/s/ Robert E. Margulies
ROBERT E. MARGULIES, ESQ.